UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

BARON WALKER,

                 Plaintiff,

        -against-                        COMPLAINT

THE CITY OF NEW YORK; JOHN DOES 1-6,

                                 17-CV-_3234_____

               Defendants.

                               **JURY TRIAL DEMANDED**

---

## PRELIMINARY STATEMENT

1. Plaintiff Baron Walker, a 51 year-old man confined to a wheelchair, was arrested in his home and taken to Brooklyn Central Booking on April 10, 2015. For the entire duration of his forty-two (42) hour, pre-arraignment detention, he was deprived of his wheelchair and of any accommodation allowing him to access toilets or food, or to move about the cell. Plaintiff was left on the filthy concrete floor of the Brooklyn Central Booking holding cell, lying in urine, decomposing food and filth.

2. Plaintiff brings this action alleging violations of the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq.*, in depriving him of his wheelchair, failing to provide reasonable accommodation, and discriminating against him because of his disability, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, 28 C.F.R. Part 35, and the Civil Rights Act of 1871, amended and codified as 42 U.S.C. § 1983, for subjecting him to unconstitutional conditions of confinement, and the deprivation of rights accorded by the Fourth and Fourteenth Amendments to the United States Constitution.

3.  This complaint seeks compensatory damages, punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq.* ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* ("Rehabilitation Act"); 28 C.F.R. Part 35; and the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States.

5.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff's claims arose in Kings County in the State of New York, within the confines of this judicial district.

6.  An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §§ 1988 and 12205.

## PARTIES

7.  Plaintiff Baron Walker ("Mr. Walker") was at all times relevant to this action a resident of the County of Kings in the State of New York. Mr. Walker was diagnosed with Transverse Myelitis since his early twenties. The resulting paralysis renders him wheelchair-bound. The conditions also resulted in his suffering from seizures. On the basis of these conditions, Mr. Walker is and was at all times relevant to this action a qualified individual within the meaning of the ADA and the Rehabilitation Act.

8.  Defendant City of New York ("City") is a municipal corporation organized under the laws of the State of New York. It is authorized by law to maintain a correction department ("DOC") which acts as its agent in the area of corrections for which it is ultimately responsible. It is

also authorized by law to maintain a police department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of the DOC and NYPD and the employment of corrections/police officers as said risks attach to the public consumers of the services provided by the DOC/NYPD.

9.  Defendant City operates a number of detention jails, including the detention jail located at 120 Schermerhorn Street, Brooklyn, New York 11201 ("Brooklyn Central Booking").  At all relevant times hereto, the New York City Department of City Administrative Services ("DCAS") owned or managed the building located at 120 Schermerhorn, Brooklyn, New York 11201, where Brooklyn Central Booking is located. Through the DCAS, the City manages the daily maintenance and operation and oversees any repairs to these buildings and therefore had a duty to the facilities enabled compliance with federal disability law and to ensure the facilities comply with Federal Law.

10. Upon information and belief, the City operates and manages the custody of detainees held at Brooklyn Central Booking, receives federal funding for the same, and through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to access to medical and other program services mandated by law. Defendant City, and through its agencies including the NYPD, DOC, and DCAS, promulgates and implements policies, including those with respect to compliance with federal, state and local disability laws, reporting, and investigation of compliance by staff and of facility conditions, and access to medical and other program services mandated by local law and court orders. In addition, senior officials of the City are aware of and tolerate certain practices by subordinate employees in the jails, including those

3

that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the City, constitute unwritten City policies or customs. Defendant City is also responsible for the appointment, training, supervision, and conduct of all City personnel, including the defendants referenced herein.

11. Defendants John Does 1-6 are and were at all times relevant herein, officers, employees and agents of defendant City. Defendants John Does 1 - 6 acted intentionally, recklessly, with malice, and in gross disregard of Mr. Walker's rights, and they are being sued herein in their individual capacities. Defendant John Does 1-6 are hereinafter referred to as the "individual defendants."

12. At all times relevant herein, the individual defendants were employees or agents of defendant City and were acting under color of state law in the course and scope of their duties and functions as agents, servants, and employees of the City and otherwise performed and engaged in conduct incidental to their lawful functions in the course of their duties. They were acting for and on behalf of the City at all times relevant herein, with the power and authority vested in them as agents and employees of the City and incidental to their duties as agents and employees of the City.

13. At all relevant times, the defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

14. The true names and shield numbers of defendant John Does are not currently known to Mr. Walker. However, the John Doe defendants were employees or agents of the defendant City, on the date of the incident, April 10, 2015. Accordingly, they may be entitled to representation in this action by the New York City Law Department ("Law Department")

upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. Walker intends to name said officers as defendants in an amended pleading once their true names and shield numbers become known and (b) that the Law Department should immediately begin preparing their defense(s) in this action.

**STATEMENT OF FACTS**

15. At the time of this incident, plaintiff Mr. Walker was a fifty-one (51) year old man with a disability as defined under the ADA. Mr. Walker has been wheelchair bound since 1989 due to transverse myelitis, a neurological disorder affecting the spinal cord and resulting in paraparesis and a seizure disorder. Mr. Walker is unable to walk or stand without assistive devices.

16. Due to Mr. Walker's condition, he is also only able to sit or hold himself up for short periods of time. He requires the use of a catheter and urine collection bag and requires accommodation in order to use a toilet to defecate.

17. On April 10, 2015, the apartment where Mr. Walker lived with his eighty-one (80) year-old mother was raided at approximately 5:30 p.m. by officers of the NYPD.

18. Mr. Walker was transported to the 79th Precinct where he was held for hours, after which was transported to Brooklyn Central Booking.

19. At Brooklyn Central Booking, the individual defendants removed Mr. Walker from his wheelchair, and dragged him to a holding cell, where they placed Mr. Walker on the concrete floor.

20. Mr. Walker made several requests to be allowed to remain in his wheelchair and not to be placed upon the cement floor.

21. The individual defendants informed Mr. Walker, sum in substance, that they were unable to do anything but put Mr. Walker on the floor, without his wheelchair, for the duration of Mr. Walker's confinement.

22. The floor of the holding cell was filthy and unsanitary, covered with urine, toilet paper, spit, vomit, remnants of prisoner meals and vermin.

23. Due to his disability, Mr. Walker was physically unable to lift himself up onto a bench and furthermore would not have been able to hold himself up on any bench, even had he been placed on or near one.

24. Mr. Walker was unable to stand, walk or use the restroom for the duration of his detention and was provided no accommodation for any of those activities.

25. During Mr. Walker's detention, the individual defendants failed to place food within Mr. Walker's reach. Instead, food for detainees was placed altogether in a box near the gate of the cell. Mr. Walker was forced to use his hands to drag his body across the filthy floor to access food, risking physical injury.

26. In order to empty his urine bag, Mr. Walker was forced to use his hands to drag his body across the filthy floor to the toilet, also risking physical injury.

27. Upon information and belief, Mr. Walker's holding cell contained many other detainees when Mr. Walker was placed in the cell.

28. Mr. Walker is approximately six feet and six inches (6'6") tall and suffers from a condition which results in involuntary spasms of his legs. In order to stay out of the way of inmates and avoid conflict with other detainees from inadvertently making contact as a result of a leg spasm or an inmate tripping on his legs, and in order to attempt to sleep, Mr. Walker

attempted to keep his legs from stretching out and instead attempted to bend and curl his legs close to his body.

29. Mr. Walker attempted to sleep two (2) nights on the unsanitary cement floor with no bedding or accommodation allowing for sleep.

30. Due to Mr. Walker's disability, he suffered delay in his processing and release.

31. Upon information and belief, the detainees in Mr. Walker's cell when he arrived were all released or transferred out of the cell at or around midnight on the day Mr. Walker was arrested.  Mr. Walker was then alone in the cell.

32. At approximately 1:00 a.m. on the second day of Mr. Walker's incarceration, another group of detainees were placed in the cell with Mr. Walker.

33. Between the hours of approximately 1:00 a.m. to 5:00 p.m., almost all of the individuals in the second group of detainees were processed and released or transferred out of the cell before Mr. Walker was removed the holding cell.

34. Defendant City and the individual defendants held Mr. Walker in custody longer than other similarly situation detainees solely due to his disability.

35. Defendant City and the individual defendants held Mr. Walker in the holding cell at Brooklyn Central Booking without his wheelchair for approximately forty-two (42) hours.

36. The delay in releasing Mr. Walker did not serve any reasonable or administrative purpose and was instead based upon the failure to make reasonable accommodation for his disability and constituted unconstitutional discrimination by defendants.

37. Upon information and belief, cots and mats are available for detainees to lie down at Brooklyn Central Booking but were not provided to Mr. Walker.  Approximately 12 hours

after arriving at Brooklyn Central Booking, Mr. Walker was provided the seat cushion from his own wheelchair.

38. For the duration of Mr. Walker's detention, the defendants failed to provide Mr. Walker any accommodation for allowing Mr. Walker to move about the cell, to eat, or to use the toilet.

39. Defendants City and the individual defendants have a duty to comply with 28 Code of Federal Regulations Section 35.152 "Jails, Detention and Correctional Facilities, and community correctional Facilities." This section applies to public entities that are responsible for the operation or management of adult … jails, detention and correctional facilities … either directly or through contractual, licensing or other arrangements with public or private entities, in whole or in part, including private correctional facilities."

   a. Section 35.152 provides that, "public entities shall implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 Standards, so as to ensure that each inmate with a disability … is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing.

   b. Section 35.152 additionally provides that, "Public entities shall ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity."

40. Upon information and belief, during the time Mr. Walker was detained, defendants failed to conduct any cleaning or sanitation of the cell or its floor.

41. Defendants deprived Mr. Walker of any accommodation for the duration of his detention and subjected him to atypical conditions of confinement in depriving him of any mobility within

the cell, depriving him of the ability to access a toilet or access food, and subjecting him to serious and substantial health risks.

42. Mr. Walker sustained physical injuries due to defendants' actions and omissions, and due to Defendants' decision to deprive Mr. Walker of his wheelchair and to force him to remain on the cement floor for the duration of his confinement.

43. Mr. Walker sustained physical injuries due to defendants' failure to provide Mr. Walker with an accommodation allowing Mr. Walker to move within the holding cell, to access the food brought into the cell, and to use the toilet.

44. As a result of defendants' acts and omissions, Mr. Wyatt experienced pain, suffering, mental anguish, and humiliation.

## FIRST CAUSE OF ACTION
### PURSUANT TO 42 U.S.C. § 12131 *et al.* and 29 U.S.C. § 794
### AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT
*(Against All Defendants)*

45. Mr. Walker repeats and re-alleges each of the above paragraphs with the same force as if set forth herein.

46. By depriving Mr. Walker of his wheelchair; failing to provide reasonable accommodation to allow Mr. Walker to move within the holding cell, to sit, to access food, or to use the toilet during his detention; and by discriminating against him by delaying his arraignment due to his disability; the defendants deprived Mr. Walker of his rights guaranteed by the ADA and the Rehabilitation Act and federal regulation applicable to the confinement of individuals with disabilities.

47. Defendants denied Mr. Walker access to jail programs and benefits available to arrestees in City custody, by denying and failing to provide any accommodation enabling access to toilets, food and liberty of movement.

9

48. As a result of defendants' acts and omissions, Mr. Walker was denied the immediate medical care he required, had his liberty unnecessarily restricted, and otherwise suffered injury and damages including, *inter alia*, physical and mental pain, suffering, humiliation and mental anguish.

## SECOND CAUSE OF ACTION
## THROUGH 42 U.S.C. § 1983
## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION
### *(Against the Individual Defendants)*

49. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

50. By the acts alleged herein, the individual defendants, acting under color of state law, in their individual capacities and within the scope of their employment, have deprived plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, and/or failed to intervene to prevent such deprivations, in violation of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including his right to be free from deprivation of liberty and excessive punishment without due process of law; to be free from unconstitutional conditions of confinement and objectively unreasonable conditions; and to be free from disparate and inhumane punishment.

51. As a result of defendants' acts and omissions, Mr. Walker was denied the immediate medical care he required, had his liberty unnecessarily restricted, and otherwise suffered injury and damages including, *inter alia*, physical and mental pain, suffering, humiliation and mental anguish.

## THIRD CLAIM
## MUNICIPAL LIABILITY PURSUANT TO *MONELL*
## FOR CONTITUTIONAL VIOLATIONS THROUGH 42 U.S.C. § 1983
### *(Against the City of New York)*

52. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

53. The acts and omissions described above were carried out pursuant to defendant City's overlapping customs and practices which were in existence on or about April 10, 2015 and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agencies the NYPD, DOC, and DCAS, in their capacities as officials pursuant to customs, policies, usages, practices, procedures and rules of the City, all under the supervision of ranking officers of the NYPD, DOC and DCAS.

54. Despite having been made aware of the unconstitutional conditions of Brooklyn Central Booking, defendant City and other municipal policymakers and supervisory personnel failed to adequately train, supervise, monitor and discipline members of the NYPD, DOC, and DCAS and other municipal personnel, who contribute to the unconstitutional conditions described herein.

55. The aforementioned custom and practice of the City includes, but is not limited to, failing to provide accommodation of pre-arraignment detainees who require the use of a wheelchair for mobility.

56. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct. The population of New York City includes almost 180,000 individuals with an ambulatory disability, and approximately 95,000 individuals who use wheelchairs, according to the De Blasio administration Commissioner of the Mayor's Office for People with Disabilities, Victor Calise.[1] According to the United

---

[1] "Accessible NYC: An Annual Report on the State of People Living with Disabilities in New York City by the Mayor's Office for People with Disabilities," see pages 8, 16.

States Census Bureau, the population of Kings County in 2015 was 2,636,735.[2]  In Kings County alone, the number of adult arrests from 2010 through 2015 reached over half a million, or 532,379 total.[3] Given the substantial population that relies upon wheelchairs for mobility, as well as the high number of arrests within Kings County, the unconstitutional practices described herein constitute a custom and policy of violating the rights of wheelchair reliant detainees held at Brooklyn Central Booking.

57. The existence of aforesaid unconstitutional customs and policies may also be inferred from repeated occurrences of similar wrongful conduct, as documented and published by media sources, including:

    a.   The Pre-Arraignment Screening Correction Health Services form fails to include any questions regarding disabilities or possible need for accommodation;

    b.   James King "A Guide to NYPD's Central Booking: Go for the Urine-Scented Everything; Stay Because They Won't Let You Leave" Village Voice, Oct. 24, 2012. Available at http://www.villagevoice.com/news/a-guide-to-nypds-central-booking-go-for-the-urine-scented-everything-stay-because-they-wont-let-you-leave-6674168;

    c.   Samuel Newhouse "Retired Brooklyn Cop Writes Book on Inefficient NYPD" Dec. 23, 2008 Brooklyn Eagle. Available at http://50.56.218.160//archive/category.php?category_id=4&id=25412; ("About a decade ago, Linn said she supervised the midnight shift at Brooklyn Central Booking at a time when conditions there were particularly hazardous and unsanitary. Because of these conditions, officers had to keep vulnerable prisoners at the station house and supervise them one-on-one, she wrote in the book.");

    d.   Jen Carlson "An Unexpected Visit to Brooklyn Central Booking" Gothamist, Dec. 27, 2007. Available at http://gothamist.com/2007/12/27/an_unexpected_v.php;

---

[2] "Quickfacts Kings County (Brooklyn Borough, New York," United States Census Bureau, available at: https://www.census.gov/quickfacts/table/PST045215/36047
[3] "Adult Arrests: 2007-2016," Division of Criminal Justice Services, New York State, available at: http://www.criminaljustice.ny.gov/crimnet/ojsa/arrests/Kings.pdf

58. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following actions filed against the City:

    i.    <u>Cano, et al. v. City, et al.</u>, 13 Civ. 3341 (WFK) (VVP): Plaintiffs allege Brooklyn Central Booking subjects detainees to overcrowding, unsanitary conditions, lack of sleeping space; deprivation of sleep because *inter alia* they were not provided beds, because the lights were on at all times; ususable toilets; sanitation issues with garbage, urine, feces, and garbage left uncleaned on the floor; infestation of rodents and insects; crime due to lack of supervision of detainees; inadequate water and food that cannot be consumed; substantial risk of harm;

    ii.    <u>Spinner, et al. v. City of New York, et al.</u>, 01 Civ. 2715, 01 Civ. 8264, 02 Civ. 2899, 02 Civ. 1039 (E.D.N.Y.): Alleging plaintiffs and numerous other arrestees were held in filthy, disease-ridden, overcrowded jail cells; cells infested with rodents and roaches for years; human feces and urine on the floor; cells contained one toilet to be shared by all detainees with no privacy; lack of clean drinking water; no supervision for violent criminals sharing cells;

    iii.    <u>Darnell v. City of New York</u>, 15 Civ. 2870 (2d Cir. 2017). The Circuit reviewed the allegations of unconstitutional conditions of confinement at Brooklyn Central Booking and stated, "[t]he plaintiffs paint a picture of BCB that is alarming and appalling. The plaintiffs testified that they found the conditions at BCB degrading, humiliating, and emotionally scarring. One plaintiff testified: "I was not treated in a humane manner. I believe if I were a dog, and that if the A.S.P.C.A. was brought in and there was a dog in that cell, that the police officers, whoever were responsible for the treatment of that dog in that cell, that they would be brought up on charges." See <u>Darnell v. Pineiro</u>, 849 F.3d 17, 26 (2d Cir. Feb. 21, 2017).

    iv.    <u>Narvaez v. City of New York</u>, 16 Civ. 1980 (GBD). Alleging unconstitutional conditions of confinement for pretrial detainees in violation of the ADA and at Brooklyn Detention Center.

59. As a result of defendants' acts and omissions, Mr. Walker was denied the immediate medical care he required, had his liberty unnecessarily restricted, and otherwise suffered injury and damages including, *inter alia*, physical and mental pain, suffering, humiliation and mental anguish.

**JURY DEMAND**

60. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

I. Award Plaintiff punitive damages in an amount to be determined at trial;

II. Award Plaintiff compensatory damages in an amount to be determined at trial;

III. Award Plaintiff reasonable attorneys fees and costs as authorized pursuant to 42 U.S.C. §§ 1988 and 12205; and

IV. Grant such other further and different relief as to the Court may seem just and proper.

Dated:   New York, New York
         May 30 , 2017

                                    Respectfully submitted,

                         By:    _____
                                    Gillian Cassell-Stiga
                                    Rankin & Taylor PLLC
                                    11 Park Place, Suite 914
                                    New York, New York 10007
                                    Phone: (212) 226-4507
                                    Email: gillian@drmtlaw.com

                                    Michael L. Spiegel
                                       of counsel
                                    Rankin & Taylor, PLLC
                                    11 Park Place, Suite 914
                                    New York, NY 10007
                                    Phone: (212) 587-8558
                                    Email: MIKESPIEG@aol.com

                                    *Attorneys for Plaintiff*