UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

BARON WALKER, individually and on behalf of a
class of all others similarly situated,

                                Plaintiff,

                -against-

THE CITY OF NEW YORK; NEW YORK
CITY POLICE (NYPD) COMMISSIONER
JAMES P. O'NEILL; NYPD OFFICER (P.O.)
MICHAEL G. PARKS; P.O. EDWARD NAJARRO;
P.O. COLON; P.O. SCHWAB; Detective ROBERT
NELSON; Sergeant RAYMOND GONZALEZ; P.O.
JASON WHYTE; Detective BRENDA VASQUEZ;
Sergeant DAN OSPINA; P.O. EDWARD
VAVRUICK; Sergeant JERRY SUKHNANDAN;
JOHN DOES 1-6,

                                Defendants.

_____

**FIRST AMENDED
CLASS ACTION COMPLAINT**

**17-CV-03234 (RJD)(CLP)**

JURY TRIAL DEMANDED

        Plaintiff Baron Walker, individually and on behalf of all others similarly situated, as and

for his complaint, by his attorneys Beldock Levine & Hoffman LLP, alleges as follows:

## PRELIMINARY STATEMENT

        1.      Plaintiff Baron Walker, a 51 year-old man confined to a wheelchair, was arrested

in his home and taken to Brooklyn Central Booking on April 10, 2015. For the entire duration of

his thirty-two (32) hour, pre-arraignment detention, he was deprived of his wheelchair and of any

accommodation allowing him to access toilets or food, or to move about the cell. Plaintiff was

left on the filthy concrete floor of the Brooklyn Central Booking holding cell, lying in urine,

decomposing food and filth.

1

2.     Despite the many years since Congress spoke as to the illegality of discrimination against those with disabilities, as codified in the Americans with Disabilities Act and related law, Defendants continue to subject pretrial detainees – not proven guilty of any crime – to disparate and discriminatory treatment in their detainment and arrest processing.

3.      When involuntarily taken into custody, New Yorkers with mobility-based disabilities experience disparate treatment pursuant to custodial arrests than others similarly situated, and have drastically limited access to services at many local precincts and in central booking, including but not limited to those basic services supporting essential human needs.

4.     While involuntarily held pursuant to a custodial arrest, New Yorkers have the right to water, food, and access to a toilet. Yet, these services are routinely denied to residents with mobility-based disabilities, or made available in such manner as to preclude their practical access, or in such matter as to require prolonging detention beyond that required for arrestees otherwise similarly situated, thereby denying equal treatment and access under the law.

5.     Individuals detained in the custody of defendant the City of New York have little to no choice or discretion in what precinct or bookings facility they are processed through, nor are they provided the choice of a facility with greater access for disables persons.

6.     Plaintiff brings this action alleging violations of the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq*., the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*., 28 C.F.R. Part 35, and the Civil Rights Act of 1871, amended and codified as 42 U.S.C. § 1983, for depriving him of his wheelchair and failing to provide reasonable accommodation, discriminating against him because of his disability, subjecting him to unconstitutional conditions of confinement, and for the deprivation of rights accorded by the Fourth and Fourteenth Amendments to the United States Constitution.

2

7.      This complaint seeks compensatory damages, punitive damages, and attorneys' fees.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to the Americans with Disabilities Act of 1990, amended and codified as 42 U.S.C. § 12132, *et seq.* and the Americans with Disabilities Amendments Act (ADAAA) (collectively the "ADA"), and related amendments and interpreting federal regulations including 28 C.F.R. Part 35; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* (the "Rehabilitation Act"); and the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of the Fourth and Fourteenth Amendments to the Constitution of the United States, in addition to pendant claims under the laws of the State of New York.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that plaintiff's claims arose in Kings County in the State of New York, within the confines of this judicial district.

10.      An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §§ 1988 and 12205.

## PARTIES

11.      Plaintiff Baron Walker ("Mr. Walker") was at all times relevant to this action a resident of the County of Kings in the State of New York. Mr. Walker was diagnosed with Transverse Myelitis since his early twenties. The resulting paralysis renders him wheelchair-bound. The conditions also resulted in his suffering from seizures. On the basis of these

conditions, Mr. Walker is and was at all times relevant to this action a qualified individual within the meaning of the ADA and the Rehabilitation Act.

12.     Defendant City of New York ("City") is a municipal corporation organized under the laws of the State of New York. It is authorized by law to maintain a correction department ("DOC") which acts as its agent in the area of corrections for which it is ultimately responsible. It is also authorized by law to maintain a police department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant City assumes the risks incidental to the maintenance of the DOC and NYPD and the employment of corrections/police officers as said risks attach to the public consumers of the services provided by the DOC/NYPD.

13.     Defendant City, as defined by the laws of the City of New York, is a government entity and thereby qualified as a "public entity" within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C.§ 12131(1) and C.F.R. § 35.104.  Defendant City receives federal financial assistance within the meaning of Section 504 of the Rehabilitation Act. Defendant City, and its agencies the NYPD and DOC, is responsible for constructing, repairing, and maintaining police stations and pre-trial holding facilities in New York City, and for issuing guidance as to the reasonable accommodation to be provided to arrestees with mobility-based disabilities.

14.     Defendant City operates a number of pre-trial holding facilities, including jailing facilities at local precincts, and bookings facilities such as that located at 120 Schermerhorn Street, Brooklyn, New York 11201 ("Brooklyn Central Booking").  At all relevant times hereto, the New York City Department of City Administrative Services ("DCAS") owned or managed the building located at 120 Schermerhorn, Brooklyn, New York 11201, where Brooklyn Central

Booking is located. Through the DCAS, the City manages the daily maintenance and operation and oversees any repairs to these buildings and therefore had a duty to the facilities enabled compliance with federal disability law and to ensure the facilities comply with Federal Law.

15.     Upon information and belief, the City operates and manages the custody of detainees held at local precincts and central bookings, receives federal funding for the same, and through its senior officials at the central office, in each facility, and in its specialized units and agencies including the NYPD, DOC, and DCAS, promulgates and implements policies, including those with respect to access to medical and other program services, mandated by law and court order. In addition, senior officials of the City are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten City policies or customs. Defendant City is also responsible for the appointment, training, supervision, and conduct of all City personnel, including the defendants referenced herein.

16.     Defendants NYPD Officer ("P.O.") Michael G. Parks, Shield No. 1790; P.O. Edward Najarro, Shield No. 3317; P.O. Colon; P.O. Schwab; Detective Robert Nelson; Sgt. Raymond Gonzalez; P.O. Jason Whyte; Detective Brenda Vasquez; JOHN DOES 1-6 are and are and were at all times relevant herein, officers, employees and agents of defendant City, and are hereinafter referred to as the "Individual Defendants."

17.     NYPD Commissioner James P. O'Neill is and was, at all times relevant herein, the Police Commissioner for the City, and is and was responsible for, and the chief architect of, the policies, practices and/or customs of the NYPD, a municipal agency of the City.  He is and was, at all times relevant herein, responsible for the hiring, screening, training, retention,

supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD, including the Individual Defendants named herein. He is sued in his official capacity.

18.     The Individual Defendants acted intentionally, recklessly, with malice, and in gross disregard of Mr. Wyatt's rights, and they are being sued herein in their individual capacities.

19.     At all times relevant herein, the Individual Defendants were employees or agents of defendant City and were acting under color of state law in the course and scope of their duties and functions as agents, servants, and employees of the City and otherwise performed and engaged in conduct incidental to their lawful functions in the course of their duties.  They were acting for and on behalf of the City at all times relevant herein, with the power and authority vested in them as agents and employees of the City and incidental to their duties as agents and employees of the City.

20.     At all relevant times, the Defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

21.     The true names and shield numbers of defendant John Does are not currently known to Plaintiff. However, John Doe defendants were employees or agents of the Defendant City, on the date of the incident. Accordingly, they may be entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officers as defendants in an amended pleading once

6

their true names and shield numbers become known and (b) that the Law Department should immediately begin preparing their defense(s) in this action.

## CLASS ALLEGATIONS

22.     Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, the named Plaintiff seeks to represent two certified plaintiff classes consisting of all persons with mobility disabilities who were taken into police custody pursuant to a custodial arrest, and processed through a precinct or central bookings facility, as follows:

a.   All those persons who have been or will be subjected by NYPD officers and the City of New York to defendants' policy, practice and/or custom, in violation of the Fourth Amendment, of subjecting individuals with mobility disabilities to discrimination in the programs, services, and activities attendant to a custodial arrest and pretrial detention, and failure to make reasonable accommodation of mobility disabilities ("the Injunctive Class").

   i.   While held at a local Precinct or Police Service Area in the Borough of Brooklyn, in Kings County.

   ii.   While held at a Brooklyn Central Bookings in the Borough of Brooklyn, in Kings County.

b.   All those persons who have been or will be subjected by NYPD officers and the City of New York to defendants' policy, practice and/or custom, in violation of the Fourth Amendment, of subjecting individuals with mobility disabilities to discrimination in the programs, services, and activities attendant to a custodial arrest and pretrial detention, and failure to make reasonable accommodation of mobility disabilities, including but not limited to, being handcuffed to a physical structure, physically removed from their

wheelchairs and placed on the floor of a cell, held in excess of 24 hours during their arrest processing, or denied access to self-catheterization equipment or wheelchair accessible toilets at a precinct or central booking, ("the Damages Class").

    i.    While held at a local Precinct or Police Service Area in the Borough of Brooklyn, in Kings County.

    ii.    While held at a Brooklyn Central Bookings in the Borough of Brooklyn, in Kings County.

23.    The members of each class are so numerous as to render joinder impracticable. Data from the Mayor's Office for People with Disabilities and the United States Census American Community Survey conducted in 2014 indicate that approximately 180,000 to 500,000 non-institutionalized New York City residents have a mobility disability.[1] Upon information and belief, hundreds of thousands of persons with mobility disabilities visit the City each year. According to the most recent United States census, there are over half a million people with ambulatory disabilities in New York City, constituting over 7% of the population.

24.    According to the United States Census Bureau, the population of Kings County in 2015 was 2,636,735.[2] In Kings County alone, the number of adult arrests from 2010 through 2015 reached over half a million, or 532,379 total.[3] Given the substantial population that relies upon wheelchairs for mobility, as well as the high number of arrests within Kings County, the members of each class are so numerous as to render joinder impracticable.

---

[1] NYC Mayor's Office for People with Disabilities, Accessible NYC: An Annual Report on the State of People Living with Disabilities in New York City at 8, 16 (2014), *available at* http://www.nyc.gov/html/mopd/downloads/pdf/ACCESS_NYC_updated.pdf.

[2] U.S. Census Bureau, Quickfacts Kings County (Brooklyn Borough, New York), *available at* https://www.census.gov/quickfacts/table/PST045215/36047.

[3] N.Y. Div. Crim. J. Servs, Adult Arrests: 2007-2016, *available at*, http://www.criminaljustice.ny.gov/crimnet/ojsa/arrests/Kings.pdf.

25.     In addition, joinder is impracticable because, upon information and belief, many members of each class are not aware of the fact that their constitutional rights have been violated and that they have the right to redress in Court.  Upon information and belief, many members of the class are without the means to retain an attorney to represent them in a civil rights lawsuit.

26.     Common questions of law and fact predominate among class members, including, but not limited to:

a.   Whether the City engages in a policy, practice and/or custom of removing individuals with mobility disabilities from their wheelchairs, and denying them reasonable access to assisted mobility devices, including wheelchair accessible transport to and from the arrest processing facilities, precincts or central booking facilities.

b.   Whether the City engages in a policy, practice and/or custom of denying individuals with mobility disabilities reasonable access to assisted mobility devices while held in custody, or handcuffing these individual to stationary physical structures for long periods of their detainment.

c.   Whether the City engages in a policy, practice and/or custom of physically removing individuals with mobility disabilities from their wheelchairs without their consent and in a reckless manner constituting a deliberate indifference to the risk of actual physical injury.

d.   Whether the City unreasonably prolongs or extends the detainment of individuals with mobility disabilities beyond that of otherwise similarly situated arrestees.

e.   Whether the City fails to make reasonable accommodation to access to food and water for individuals with mobility disabilities during their detainment.

f.  Whether the City fails to make reasonable accommodation to allow individuals with mobility disabilities to urinate during their detainment, and without imposing the unreasonable requirement that these individuals visit a hospital or otherwise unnecessarily extend the duration of their detainment.

g.  Whether the City's failure to make reasonable accommodations for individuals with mobility disabilities during custodial arrests amounts is in violation of Title II of the ADA, Section 504 of the Rehabilitation Act.

h.  Whether the City's treatment of individuals with mobility disabilities during custodial arrests amounts to an unreasonable seizure and/or unconstitutional conditions of confinement in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

i.  Whether the City, New York City Police Commissioner James P. O'Neill, and other supervisory defendants, supervising officials and/or personnel, have failed to adequately and properly screen, train, supervise, monitor and discipline officers, and whether those failures have resulted in and will continue to result in the unconstitutional conditions of confinements of class members.

j.  Whether the City, New York City Police Commissioner James P. O'Neill, and other supervisory defendants, supervising officials and/or personnel, sanctioned and/or failed to rectify unconstitutional practices and customs, and whether such acts and omissions have resulted in and will continue to result in constitutional violations by officers and City employees against class members.

27.  These common questions of fact and law all flow from the same policies, enacted by the named and unnamed defendants, and implemented by the same named and unnamed

defendants.  The named Plaintiff and all class members were and are victimized by these same polices of denying individuals with mobility disabilities reasonable accommodations and subjecting such individuals to unconstitutional conditions of confinement and otherwise discriminating against arrestees with mobility disabilities, and thus the foregoing common questions of law and fact greatly predominate over any questions affecting only individual members, including legal and factual issues relating to damages.

28.     The named Plaintiff is an adequate class representative because he was and is directly impacted by Defendants' failure to provide reasonable accommodations and constitutional conditions of confinement to arrestees with mobility disabilities, and Plaintiff is typical of the members of each class.  Like the other member of the Injunctive Class, the named Plaintiff has been, and likely will be again, a victim of the City's policy, practice, and/or custom in that he has been and likely will continue to be subject to the Defendants' unconstitutional conduct.  Like other members of both the Injunctive and Damages Classes, the named Plaintiff risks being arrested in the future. Plaintiff is a residents of New York City, and in particular Kings County, and is susceptible of being arrested, processed, and detained in the same patently impermissible manner should these unconstitutional practices not be enjoined from continuing.

29.     The legal theories under which the named Plaintiff seeks declaratory and injunctive relief are the same or similar to those on which all members of the class will rely, and the harms suffered by the named Plaintiff are typical of the harms suffered by the class members.

30.     The named Plaintiff has a strong personal interest in the outcome of this action, has no conflicts of interest with members of either class, and will fairly and adequately protect the interests of each class.  Plaintiff's interests are not antagonistic to, or in conflict with, the interests of the class as a whole.

31.     As long as the City engages in its policy, practice, and/or custom of detaining arrestees with mobility disabilities in an unconstitutional manner, the named Plaintiff is and will remain, at high risk of having his constitutional rights violated by Defendants.

32.     The named Plaintiff is represented by the members of the law offices of Beldock Levine & Hoffman LLP.  Counsels collectively are experienced civil rights attorneys and/or have litigated a wide range of class action lawsuits. Counsels for the named Plaintiff have the resources, expertise, and experience to prosecute this action, and know of no conflicts among members of the class or between the attorneys and members of the class.

33.     The Injunctive Class should be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the Defendants have acted on grounds generally applicable to the class, thereby making class-wide declaratory and injunctive relief appropriate.

34.     The Damages Class should be certified pursuant to Rule 23(b)(3) because questions of law or fact common to the members of the class predominate over any questions affecting only individual class members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## STATEMENT OF FACTS

### Reasonable Conditions of Confinement and Required Accommodations

35.     A custodial arrest, with or without probable cause, is unquestionably a seizure within the meaning of the Fourth Amendment. Thus, establishing the constitutionally permissible conditions of confinement of a pre-trial, pre-arraignment arrestee requires meeting the reasonability requirements of the Fourth Amendment, pursuant to Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), as interpreted and applied to the context at bar by the Second Circuit in Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017).

36.     Defendants own, maintain, or operate approximately 77 police stations throughout the five boroughs of New York City, including approximately 23 precincts in the borough of Brooklyn in Kings County, and bookings facilities in each borough including that of Brooklyn Central Booking.   These facilities house approximately 300,000 pretrial, pre-arraignment arrestees annually, and in so doing provide programs, services, and activities that are central to the functioning of the criminal justice system of the City of New York.[4]

37.     Because New Yorkers may be subject to a custodial arrest at any time, it is often impossible to predict or anticipate which facility a particular resident will taken to, or processed through, attendant to a custodial arrest.  Individuals with mobility disabilities cannot choose the precinct, arrest processing, or booking facilities where they will be detained.  Thus, individuals with mobility disabilities must have the same programs, services, activities, and accommodations regardless of where they are held.

38.     Because pre-arraignment custodial arrests occurred before an individual has been convicted of a crime or even before formal charges are filed in any criminal court, the constitutionally permissible conditions of confinement for pre-arraignment custodial arrestees are not governed by the more lenient bounds of the Eight Amendment prohibiting cruel and unusual punishment. Pre-trial, pre-arraignment detainees cannot be subject to any punishment in response to or in retaliation for the alleged basis underlying the arrest.

39.     Defendant City, as a qualified "public entity" within the meaning of Title II of the ADA, as that term is defined under 42 U.S.C.§ 12131(1) and C.F.R. § 35.104, and as a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act,  is responsible for constructing, repairing, and maintaining police stations and jailing facilities in

_____

[4] "Adult Arrests: 2007-2016," Division of Criminal Justice Services, New York State, available at: http://www.criminaljustice.ny.gov/crimnet/ojsa/arrests/nyc.pdf

13

New York City, and for issuing guidance as to the detainment and reasonable accommodation to be provided to pre-arraignment arrestees with mobility-based disabilities.

40.     Accordingly, Defendant City promulgated procedures and guidelines for the arrest, processing, and detainment of pre-arraignment custodial arrestees with mobility disabilities, and the functions to be performed by personnel involved in these custodial arrests – from the arresting officers, jailors, emergency services personnel, and other custodial personnel, to the supervising officers of precincts and bookings facilities.  These procedures and guidelines are clearly insufficient.

**Experience and Harm to Plaintiff Class**

41.     All members of each class ("Class Members") were subject of a custodial arrest in which they were involuntarily transported to a City facility, including precincts and bookings, for the purpose of arrest processing and prior to an arrangement.

42.     During their custodial arrests, Class Members are subject to discrimination, unconstitutional conditions of confinement, and otherwise harmed, by Defendants, including by means of:

a.  Denying Class Members wheelchair accessible transport to and from the arrest processing facility, precinct, and/or central booking;

b.  Recklessly removing Class Members from their wheelchairs in a manner that is deliberately indifferent to the risk of harm, and often resulting in actual physical injury;

c.  Denying Class Members reasonable access to assisted mobility devices during their confinement, and/or handcuffing Class Members to stationary physical structures for long periods of their detainment, thereby unreasonably precluding the ability to

14

reposition themselves, avoid physical strain or injury, and otherwise limiting their mobility, range of motion, and liberty beyond that of similarly situated custodial arrestees;

d.  Failing to make reasonable accommodation for Class Members to access food and water during their detainment;

e.  Housing Class Members in cells or in such manner that there are architectural impediments and obstacles precluding access to toilets or the ability to urinate, not otherwise present for similarly situated arrestees.

f.  Failing to adequately supervise Class Members during the period of detention or respond to reasonable requests for assistance;

g.  Prolonging the duration of processing and detainment of Class Members beyond that of otherwise similarly situated custodial arrestees, by:

i.  Transferring all similarly situated arrestees to bookings prior to Class Members.

ii.  Requiring Class Members consent to unreasonably prolonged detainment in order to access the programs, services, activities, and accommodations otherwise provided to similarly situated arrestees.

43.  Upon information and belief, Defendant City has failed to promulgate reasonably specific procedures and guidelines for the arrest, processing, and detainment of pre-arraignment custodial arrestees with mobility disabilities.

44.  Where official procedures and guidelines have been written, Defendant City fails to provide sufficient resources for implementation of procedures and guidelines that would allow personnel the ability to adhere to those policies, including by failing to procure necessary

15

equipment, make architectural modifications, or implement effective training. This policy, custom, and practice, results in the practical inaccessibility of, *inter alia*, wheelchair accessible transport, wheelchair accessible toilets, catheter kits, guard and support rails, as well as the facilities themselves or mobility within.  Further, this policy, custom, and practice, results in widespread discriminatory and dehumanizing treatment.

45.     Defendant City further fails to make arrest personnel reasonably aware of ADA and constitutional requirements so that they are reasonably knowledgeable of the appropriate procedures and guidelines governing arrests and detentions and can reasonably respond to the needs of pre-arraignment custodial arrestees with mobility disabilities, and in a timely manner. This policy, custom, and practice, results in, *inter alia*:

a. The failure to make appropriate record of a mobility disability or timely notify appropriate support services personnel;

b. The verbal denial of rights and accommodations actually available to Class Members;

c. The failure to record, report, or respond to the complaints of Class Members;

d. The denial of rights and accommodations otherwise afforded to similarly situated arrestees;

e. The otherwise discriminatory, abusive, inhumane, degrading, and humiliating treatment of Class Members.

46.     All Class Members have been subject to the unlawful, unconstitutional, and unreasonable arrests and detainments, and otherwise harmed as a result of Defendants' conduct, policies, customs, and practices.

**The Experience of Plaintiff Baron Walker**

47.     At the time of this incident, plaintiff Mr. Walker was a fifty-one (51) year old man with a disability as defined under the ADA. Mr. Walker has been wheelchair bound since 1989 due to transverse myelitis, a neurological disorder affecting the spinal cord and resulting in paraparesis and a seizure disorder. Mr. Walker is unable to walk or stand without assistive devices.

48.     Due to Mr. Walker's condition, he is also only able to sit or hold himself up for short periods of time. He requires the use of a catheter and urine collection bag and requires accommodation in order to use a toilet to defecate.

49.     On April 10, 2015, the apartment where Mr. Walker lived with his eighty-one (81) year-old mother was raided at approximately 4:30 p.m. by officers of the NYPD.

50.     Mr. Walker was transported to the 79th Precinct where he was held overnight, after which Mr. Walker was transported to Brooklyn Central Booking in the morning and again held until the following day, for a total of over 32 hours.

51.     Upon information and belief, the detainees in Mr. Walker's cell when he arrived were all released or transferred out of the cell at or around midnight on April 10th.  Mr. Walker was then alone in the cell.

52.     At approximately 1:00 a.m. on April 11, 2015, another group of detainees were placed in the cell with Mr. Walker.  These detainees were also transferred to bookings and processed prior to Mr. Walker's release.

53.     Mr. Walker was ultimately transported to Brooklyn Central Booking at approximately 10:00 a.m. on April 11th.

54.     At Brooklyn Central Booking, the Individual Defendants removed Mr. Walker from his wheelchair, and dragged him to a holding cell, where they placed Mr. Walker on the concrete floor.

55.     Mr. Walker made several requests to be allowed to remain in his wheelchair and not to be placed on the cement floor.

56.     The individual defendants informed Mr. Walker, sum in substance, that they were unable to do anything but put Mr. Walker on the floor, without his wheelchair, for the duration of Mr. Walker's confinement.

57.     The floor of the holding cell was filthy and unsanitary, covered with urine, toilet paper, spit, vomit, remnants of prisoner meals and vermin.

58.     Due to his disability, Mr. Walker was physically unable to lift himself up onto a bench and furthermore would not have been able to hold himself up on any bench, even had he been placed on or near one.

59.     Mr. Walker was unable to stand, walk, or use the restroom. He was not provided with any accommodation in any way.

60.     The Individual Defendants failed to place food within Mr. Walker's reach. Instead, food for detainees was placed altogether in a box near the gate of the cell. Mr. Walker was forced to use his hands to drag his body across the filthy floor to access food, risking physical injury.

61.     In order to empty his urine bag, Mr. Walker was forced to use his hands to drag his body across the filthy floor to the toilet, also risking physical injury.

62.     Upon information and belief, Mr. Walker's holding cell at Brooklyn Central Booking was crowded and contained many other detainees when Mr. Walker was placed in the cell.

63.     Mr. Walker is approximately six feet and six inches (6'6") tall and suffers from a condition which results in involuntary spasms of his legs. Mr. Walker struggled to stay out of the way of inmates and avoid conflict with other detainees from inadvertently making contact as a result of an involuntarily leg spasm.

64.     Due to Mr. Walker's disability, he suffered delay in his processing and release.

65.     Mr. Walker attempted to sleep on the unsanitary cement floor with no bedding or accommodation allowing for sleep.

66.     Upon information and belief, cots and mats are available for detainees to lie down at Brooklyn Central Booking but were not provided to Mr. Walker.  Many hours after arriving at Brooklyn Central Booking, Mr. Walker was finally provided the small seat cushion from his own wheelchair.

67.     Upon information and belief, during the time Mr. Walker was detained, Defendants failed to conduct any cleaning or sanitation of the cell or its floor.

68.     Defendants failed to provide Mr. Walker any accommodation for allowing Mr. Walker to move about the cell, to eat, or to use the toilet.

69.     Defendant City and the individual defendants held Mr. Walker at Brooklyn Central Booking without his wheelchair until immediately prior to his arraignment, when he was dragged and placed in his wheelchair for the purpose of appearing in Court.

70.     Defendant City and the individual defendants held Mr. Walker in custody longer than other similarly situation detainees solely due to his disability. The delay in releasing Mr.

Walker did not serve any reasonable or administrative purpose and was instead based upon the failure to make reasonable accommodation for his disability and constituted unconstitutional discrimination by defendants.

71.     Mr. Walker sustained physical injuries due to defendants' actions and omissions, and due to Defendants' decision to deprive Mr. Walker of his wheelchair, refusal to provide him with an accommodation to move within the holding cell, to access the food brought into the cell, to use the toilet. Defendants forced Mr. Walker to remain on the cement floor for the duration of his confinement and subjected him to serious and substantial health risks.

72.     As a result of defendants' acts and omissions, Mr. Wyatt experienced pain, suffering, mental anguish, and humiliation.

**FIRST CAUSE OF ACTION**
**PURSUANT TO 42 U.S.C. § 12131 *et seq.***
<u>**AMERICANS WITH DISABILITIES ACT**</u>
*(Against All Defendants)*

73.     Plaintiff repeats and re-alleges each of the above paragraphs with the same force as if set forth herein.

74.     Title II of the ADA, prohibits a public entity from excluding a person with a disability from participating in, or otherwise benefiting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability. 42 U.S.C. § 12132. "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

75.     A "public entities" includes state and local governments, their agencies, and their instrumentalities. 42 U.S.C. § 12131(1).   Defendant City is a public entity.

20

76.     The term "disability" includes a physical disability that "substantially limits one or more major life activities." 42 U.S.C. § 12102(2). A qualified "individual with a disability" is defined as an "individual with a disability who, with or without reasonable modification to rules, polices, or practices, the removal or architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

77.     Plaintiff and Class Members are qualified individuals with disabilities within the meaning of the statutes, in that they have impairments which substantially limit one or more major life activities, including their ability to walk. Plaintiffs and Class Members also reside or are located in New York City and thus are subject to policing and law enforcement activities conducted by Defendant City and through its agency the NYPD, and thus are eligible to participate in and receive the programs, services, activities, and accommodations provided voluntarily or involuntarily by the Defendants attendant to a custodial arrest.

78.     Title II of the ADA requires public entities, including Defendants, to operate each of their programs, services, or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." Title II also requires the features of all facilities to be accessible under the ADA, including buildings, structures, or sites where facilities are located.

79.     Law enforcement and criminal arrest processing constitutes a vital program, service, or activity provided by Defendants. Defendants have failed to provide custodial arrestees with mobility disabilities with meaningful access to these programs, services, and activities in violation of the ADA. Defendants have failed to make reasonable or necessary

21

architectural modifications and ongoing maintenance of facilities to provide meaningful access to Plaintiffs and Class Members.

80.     Defendants City and the individual defendants have a duty to comply with ADA interpreting and implementing regulations, including 28 Code of Federal Regulations Section 35.152 "Jails, Detention and Correctional Facilities, and community correctional Facilities." This section applies to public entities that are responsible for the operation or management of adult … jails, detention and correctional facilities … either directly or through contractual, licensing or other arrangements with public or private entities, in whole or in part, including private correctional facilities."

   a. Section 35.152 provides that, "public entities shall implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 Standards, so as to ensure that each inmate with a disability … is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing.

   b. Section 35.152 additionally provides that, "Public entities shall ensure that qualified inmates or detainees with disabilities shall not, because a facility is inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of, the services, programs, or activities of a public entity."

81.     Defendants have failed and continue to fail to provide reasonable accommodations of mobility disabilities and wheelchairs; fail to provide vehicle transportation accommodating mobility disabilities; fail to provide reasonable accommodations to move or adjust oneself while detained or within holding cells, including accommodations to sit, access

food, or use the toilet during detention; fail to ensure that toilets are accessible and deny access to self-catheterization kits; and discriminate against Plaintiff and Class Members by delaying arrest processing and release, thereby depriving Plaintiff and Class Members of the rights guaranteed by the ADA and accompanying federal regulation applicable to the confinement of individuals with disabilities.

82.     As a result of Defendants' acts and omissions, Plaintiff and Class Members were, are, and will continue to be denied the reasonable accommodation or immediate care required, have their liberty unnecessarily and unreasonably restricted, and otherwise suffer injury and damages including, *inter alia*, physical and mental pain, suffering, humiliation and mental anguish.

**SECOND CAUSE OF ACTION**
**PURSUANT TO 29 U.S.C. § 794, *et seq.***
**<u>REHABILITATION ACT OF 1973</u>**
(*Against All Defendants*)

83.     Plaintiff repeats and re-alleges each of the above paragraphs with the same force as if set forth herein.

84.     Section 504 of the Rehabilitation Act provides that "[N]o otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794.

85.     Plaintiff and Class Members each qualify as an "individual with a disability" as defined by 29 U.S.C. §705(2))(B) and 42 U.S.C. § 12102(2).

86.     Defendant City, and its agencies, received federal financial assistance for law enforcement and criminal processing related programs and facilities adequate to invoke the coverage of Section 504 at all time relevant herein. 29 U.S.C. § 794(b).

23

87.     Defendants have failed and continue to violate Section 504 of the Rehabilitation Act, where at all times relevant herein, and ongoing they fail to provide reasonable accommodations of mobility disabilities and wheelchairs; fail to provide vehicle transportation accommodating mobility disabilities; fail to provide reasonable accommodations to move or adjust oneself while detained or within holding cells, including accommodations to sit, access food, or use the toilet during detention; fail to ensure that toilets are accessible and denying access to self-catheterization kits; and discriminate against Plaintiff and Class Members by delaying arrest processing and release, thereby depriving Plaintiff and Class Members of the rights guaranteed by the Rehabilitation Act and federal regulation applicable to the confinement of individuals with disabilities.

88.     As a result of Defendants' acts and omissions, Plaintiff and Class Members were and are denied the reasonable accommodation or immediate care required, have their liberty unnecessarily and unreasonably restricted, and otherwise suffer injury and damages including, inter alia, physical and mental pain, suffering, humiliation, and mental anguish.

89.     The acts of the Individual Defendants were intentional, wanton, malicious, reckless, and oppressive, thus entitling Plaintiff to an award of punitive damages.

**THIRD CAUSE OF ACTION**
**THROUGH 42 U.S.C. § 1983**
**DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION**
*(Against the Individual Defendants)*

90.     Plaintiff repeats and incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

91.     By the acts alleged herein, the Individual Defendants, acting under color of state law, in their individual capacities and within the scope of their employment, have deprived Plaintiff  and Class Members of rights, remedies, privileges, and immunities guaranteed to every

citizen of the United States, and/or failed to intervene to prevent such deprivations, in violation of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983, including their right to be free from deprivation of liberty and excessive punishment without due process of law; to be free from unconstitutional conditions of confinement and objectively unreasonable conditions; and to be free from disparate and inhumane treatment and punishment.

92.     As a direct and proximate result of the Individual Defendants' acts and omissions, Plaintiff and Class Members were denied the immediate medical care they required, had their liberty unconstitutionally and unnecessarily restricted, were subjected to unconstitutional conditions of confinement and unreasonable detainments, and otherwise suffered injury and damages described above, including, inter alia, physical and mental pain, suffering, humiliation and mental anguish.

93.     The acts of the Individual Defendants were intentional, wanton, malicious, reckless, and oppressive, thus entitling Plaintiff to an award of punitive damages.

**FOURTH CLAIM**
**MUNICIPAL LIABILITY PURSUANT TO *MONELL***
**FOR CONTITUTIONAL VIOLATIONS THROUGH 42 U.S.C. § 1983**
*(Against Defendant the City of New York)*

94.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

95.     The pervasive unconstitutional practices of Defendant City are a direct and proximate result of policies, practices and/or customs devised, implemented, enforced and sanctioned by Defendants and supervisory officials whose identifies are presently unknown, with the knowledge that such policies, practices, and/or customs would lead to violations of the Fourth and Fourteenth Amendments.

25

96.     Those policies, practices, and/or customs include the conduct described herein, including those at paragraph 41.

97.     The acts and omissions described above were carried out pursuant to defendant City's overlapping customs and practices and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agencies the NYPD, DOC, and DCAS, in their capacities as officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD, DOC and DCAS.

**Failure to Properly Screen, Train and Supervise Officers**

98.     Although fully aware that the work of NYPD, DOC, and DCAS and other municipal personnel demands extensive training, superior judgment, and close supervision, Defendant City and supervising officials failed to properly screen, train, and supervise employees and agents, including NYPD and DOC officers, knowing that such failures would result in Fourth and Fourteenth Amendment violations.

99.     The inadequate screening, training and supervision of officer is a direct and proximate cause of the City's rampant unconstitutional detentions of pretrial arrestees with mobility disabilities, Plaintiff and Class Members.  As a direct and proximate cause of the defendants' failure to screen, train, and supervise officers, hundreds of individuals with mobility disabilities have been subjected to unconstitutional pre-trial and pre-arraignment detentions. By failing to properly screen, train, and supervise officers and City employees, the City, Commissioner O'Neill, and other supervisorial defendants and/or personnel have acted recklessly and with deliberate indifference to the constitutional rights of those with mobility disabilities in the context of custodial arrests and detentions.

26

**Failure to Monitor and Discipline Officers**

100.   The aforementioned widespread abuses are also a direct and proximate result of the failure of the City, Commissioner O'Neill, and other supervisorial defendants and/or personnel to properly and adequately monitor, discipline, and take necessary corrective action against officers who engage in, encourage, ignore or conceal unconstitutional practices.

101.   The City, Commissioner O'Neill, and other supervisorial defendants and/or personnel have failed to properly and adequately monitor, discipline and take necessary corrective action against officers, knowing that such omissions would lead to Fourth and Fourteenth Amendment violations. By such acts and omissions, these Defendants have acted recklessly and with deliberate indifference to the constitutional rights of those with mobility disabilities who would be subject to custodial arrests and pretrial detentions, including Plaintiff and Class Members.

**Encouraging, Sanctioning and Failing to Rectify Unconstitutional Detentions of Arrestees with Mobility Disabilities**

102.   With the knowledge that such acts and omissions create a likelihood of Fourth and Fourteenth Amendment violations, the City, Commissioner O'Neill, and other supervisorial defendants and/or personnel have encouraged its officers and agents with commendations and public praise rather than taking steps to rectify these abuses and unconstitutional practices.

103.   As a direct and proximate result of the above polices, practices, and/or customs, hundreds of people have been, and will be, subject to unconstitutional detentions.  Through such acts and omissions, the City, Commissioner O'Neill, and other supervisorial defendants and/or personnel have acted recklessly and with deliberate indifference to the constitutional rights of individual who have or will be subject to custodial arrests and pretrial detentions, including Plaintiff and Class Members.

104.    The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct. The population of New York City includes almost 180,000 individuals with an ambulatory disability, and approximately 95,000 individuals who use wheelchairs, according to the De Blasio administration Commissioner of the Mayor's Office for People with Disabilities, Victor Calise.5 According to the United States Census Bureau, the population of Kings County in 2015 was 2,636,735.6  In Kings County alone, the number of adult arrests from 2010 through 2015 reached over half a million, or 532,379 total.7 Given the substantial population that relies upon wheelchairs for mobility, as well as the high number of arrests within Kings County, the unconstitutional practices described herein constitute a custom and policy of violating the rights of wheelchair reliant detainees held in precincts within the Borough of Brooklyn and.

105.    The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following actions filed against the City:

**Unconstitutional Conditions of Confinement for Pre-trial Detainees:**

i.   <u>Cano, et al. v. City, et al.</u>, 13 Civ. 3341 (WFK) (VVP): Plaintiffs allege Brooklyn Central Booking subjects detainees to overcrowding, unsanitary conditions, lack of sleeping space; deprivation of sleep because *inter alia* they were not provided beds, because the lights were on at all times; ususable toilets; sanitation issues with garbage, urine, feces, and garbage left uncleaned on the floor; infestation of rodents

---

5 NYC Mayor's Office for People with Disabilities, Accessible NYC: An Annual Report on the State of People Living with Disabilities in New York City at 8, 16 (2014), *available at* http://www.nyc.gov/html/mopd/downloads/pdf/ACCESS_NYC_updated.pdf.

6 U.S. Census Bureau, Quickfacts Kings County (Brooklyn Borough, New York), *available at* https://www.census.gov/quickfacts/table/PST045215/36047.

7 "N.Y. Div. Crim. J. Servs, Adult Arrests: 2007-2016, available at, http://www.criminaljustice.ny.gov/crimnet/ojsa/arrests/Kings.pdf.

and insects; crime due to lack of supervision of detainees; inadequate water and food that cannot be consumed; substantial risk of harm;

ii.   <u>Spinner, et al. v. City of New York, et al.</u>, 01 Civ. 2715, 01 Civ. 8264, 02 Civ. 2899, 02 Civ. 1039 (E.D.N.Y.): Alleging plaintiffs and numerous other arrestees were held in filthy, disease-ridden, overcrowded jail cells; cells infested with rodents and roaches for years; human feces and urine on the floor; cells contained one toilet to be shared by all detainees with no privacy; lack of clean drinking water; no supervision for violent criminals sharing cells;

iii.   <u>Darnell v. City of New York</u>, 15 Civ. 2870 (2d Cir. 2017). The Circuit reviewed the allegations of unconstitutional conditions of confinement at Brooklyn Central Booking and stated, "t]he plaintiffs paint a picture of BCB that is alarming and appalling. The plaintiffs testified that they found the conditions at BCB degrading, humiliating, and emotionally scarring. One plaintiff testified: "I was not treated in a humane manner. I believe if I were a dog, and that if the A.S.P.C.A. was brought in and there was a dog in that cell, that the police officers, whoever were responsible for the treatment of that dog in that cell, that they would be brought up on charges." <u>See</u> Darnell v. Pineiro, 849 F.3d 17, 26 (2d Cir. Feb. 21, 2017).

**Unconstitutionality Treatment of Individuals with Mobility Disabilities in City Custody:**

iv.   The Voluntary Compliance Agreement between the United States of America and The New York City Department of Correction, signed and dated August 5, 2004. Alleging failure to designate responsible employee to coordinate ADA compliance obligations or provide such information to inmates, and instituting remedial measures.

v.   The Voluntary Compliance Agreement between the United States of America and The New York City Department of Correction, signed and dated May 24, 2007, describing the volume of complaint from inmates in City custody alleging that the DOC is operating in violation of Title II of the ADA for, *inter alia*, transporting inmates to and from court appearances, DOC facilities, and medical appointments in **vehicles inaccessible to inmates with mobility impairments**, and setting forth remedial measures including that "DOC shall immediately discontinue its use of any inaccessible vehicles to transport inmates with mobility impairments" and requiring comprehensive written policies and procedures, and training.

vi.   <u>Brooklyn Center for Independence of the Disabled v. City of New York</u>, No. 11 Civ. 6690 (S.D.N.Y.). In November 2013, the Court found the City liable for failing to provide meaningful access to people with disabilities to its emergency preparedness programs and services.

vii.   <u>Jose Marles, v. City of New York, et al.</u>, 13 Civ. 7667 (S.D.N.Y.) – Order dated September 8, 2016, at Dkt. No. 63, denying summary judgment to defendants on

plaintiff's claims pursuant to the ADA and Rehabilitation Acts in connection with plaintiff's post-arrest transport to the 9th precinct.

viii. <u>Wagner, et al. v. City of New York, et al.,</u> 14 Civ. 2521 (S.D.N.Y.). Order dated September 28, 2015, Dkt. No.60, denying summary judgment to defendants on plaintiffs' claims that they were denied reasonable accommodations for their disabilities and were injured by that failure to accommodate pursuant to the ADA and Rehabilitation Acts.

ix. <u>Filer v. City of New York, et al.,,</u> 14 Civ. 5672 (E.D.N.Y.). Alleging unconstitutional **transport and detainment** of arrestee with mobility disability, including <u>Monell</u> allegations that Defendant City of New York has no written policy in place for the NYPD concerning how its employees transport people who use wheelchairs.

x. <u>Stewart v. City of New York, et al.</u> 15 Civ. 7652 (S.D.N.Y.). Alleging constitutional violations and <u>Monell</u> liability where Defendant City has no written policy in place concerning how its employees reasonably accommodate detainees or arrestees with a disability requiring use of a diaper or catheter.

xi. <u>Krieg v. City of New York, et al.,</u> 15 Civ. 03626 (S.D.N.Y.). Alleging <u>Monell</u> liability and unconstitutional arrest transport and detainment of plaintiff, who was paralyzed from the waist down, where defendants failed to secure plaintiff in transport, handcuffed plaintiff to exterior bar of holding cell because it was not wheelchair accessible, and denied plaintiff access to self-catheterization supplies.

xii. <u>Disabled in Action, et al. v. The City of New York, et al.,</u> 16 Civ. 8354 (S.D.N.Y.). Class action lawsuit pursuant to the ADA and Rehabilitation Act alleging denial of access to programs, services, and reasonable accommodations for individuals with mobility disabilities at **police precincts** in the City of New York, including specific allegations that architectural barriers and other obstacles render precinct inaccessible for those with mobility disabilities.

xiii. <u>Narvaez v. City of New York</u>, 16 Civ. 1980 (GBD). Alleging unconstitutional conditions of confinement for pretrial detainees in violation of the ADA and at Brooklyn Detention Center.

106. Defendants have implemented, enforced, encouraged and sanctioned a policy, practice and/or custom of subjecting custodial arrestees and pretrial detainees with mobility disabilities, including Plaintiff and Class Members, to unconstitutional conditions of confinement in violation of the Fourth and Fourteenth Amendments to the Constitution.

30

107.   Defendants acted under color of law and with deliberate indifference to the Fourth and Fourteenth Amendment rights of the named Plaintiffs and Class Members.  As a direct and proximate result of the acts and omissions of the Defendants the Fourth and Fourteenth Amendment rights of the named Plaintiff and Class Members have been violated.

108.   As a direct and proximate result of Defendants' acts and omissions, Plaintiff and Class Members were denied the immediate medical care required, had their liberty unnecessarily and unconstitutionally restricted, and otherwise suffered injury and damages including, inter alia, physical and mental pain, suffering, humiliation and mental anguish.

109.   As a result of this policy, practice and/or custom, the Defendants have unconstitutionally and unlawfully detained members of the Damages Class. As a result of this policy, practice and/or custom, the Defendants have unconstitutionally and unlawfully detained and continue to unlawfully detain members of the Injunctive Class.

110.   Only an injunction is certain to end Defendants' unlawful practices.  Defendants have persisted in carrying out these illegal practices despite numerous complaints, lawsuits, media attention, and action by the United States Department of Justice, through their representatives within New York City, and including judicial decisions and United States Agency determinations that Defendants are in violation of the Constitution, the ADA, and the Rehabilitation Act.

111.   Upon information and belief, Defendants have agree to cease or slow these practices and undertake remedial measures in the past, only to continue to engage in a policy, custom and/or practice of noncompliance.

112.     The named Plaintiff and Class Members have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights, liberty, and human dignity, unless Defendants are enjoined from continuing these policies, practices and/or customs.

113.     As a direct and proximate result of the acts and omissions of the Defendants the named Plaintiff and Class Members have been deprived of their rights under the Fourth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983, and have suffered the injuries and damages described above.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows, including but not limited to:

I.     Enter an order certifying this action as a class action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure in the manner described herein, with the named Plaintiff as class representative;

II.     Enter a class-wide judgment declaring that Defendants' policy, practice and/or custom in arresting individuals with mobility disabilities and detaining them at New York City pretrial detention facilities, including precincts and bookings, as alleged herein, has violated and continues to violate Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and state and local law.

III.     Enter a class-wide judgment declaring that Defendants' policy, practice and/or custom in arresting individuals with mobility disabilities and detaining them at New York City pretrial detention facilities, including precincts and bookings, as alleged herein, has violated and continues to violate the Fourth and Fourteenth Amendments to the United States Constitution

and that the implementation, enforcement, supervision, and sanctioning by officers is a direct and proximate result of the following practices and/or customs of the City:

a. Denying Class Members wheelchair accessible transport to and from the arrest processing facility, precinct and/or central booking;

b. Recklessly removing Class Members from their wheelchairs often times in such in manner constituting a recklessness to the risk of harm, and often times resulting in physical injury;

c. Detaining Class Members reasonable access to assisted mobility devices during their confinement and/or handcuffing Class Members to stationary physical structures, for long periods of their detainment, unreasonably precluding their ability to reposition themselves, avoid physical strain or injury, and otherwise limiting their mobility and range of motion beyond that of similarly situated custodial arrestees;

d. Failing to make reasonable accommodation for Class Members to access to food and water during their detainment;

e. Housing Class Members in cells or in such manner that there are architectural impediments and obstacles precluding access to toilets or the ability to urinate, not otherwise present for similarly situated arrestees;

f. Failing to adequately supervise Class Members during the period of detention or respond to reasonable requests for assistance;

g. Prolonging the duration of processing and detainment of Class Members beyond that of otherwise similarly situated custodial arrestees, by:

i. Transferring all similarly situated arrestees to bookings prior to Class Members.

33

      ii.  Requiring Class Members consent to unreasonably prolonged detainment in order to access the programs, services, activities, and accommodations otherwise provided to similarly situated arrestees.

IV.    Issue an Order for the following injunctive relief:

1) Enjoin Defendant City from denying Class Members wheelchair accessible transport to and from the arrest processing facilities, precincts and/or central booking during the period of their custodial arrrest;

2) Enjoin Defendant City from handcuffing Class Members to stationary physical structures, unreasonably precluding their ability to reposition themselves, or otherwise limiting their mobility and range of motion beyond that of similarly situated custodial arrestees;

3) Enjoin Defendant City from removing Class Members from their wheelchairs for the purpose of detention;

4) Enjoin Defendant City from detaining Class Members in cells or in such manner that there are architectural impediments and obstacles precluding access to toilets or the ability to urinate;

5) Enjoin Defendant City from denying Class Members access to self-catheterization devices, or requiring transfer to remote medical facilities for the purpose of urination and defecation;

6) Prolonging the duration of processing and detainment of Class Members beyond that of otherwise similarly situated custodial arrestees;

V.    Award the named Plaintiff and members of the Damages Class compensatory damages in amounts that are, just and reasonable, to be determined at trial;

VI.       Award the named Plaintiff and members of the Damages Class punitive damages, including punitive damages pursuant to the NYCHRL, against the Individual Defendants in an amount to be determined at trial;

VII.      Award the named Plaintiff and Class Members reasonable attorneys' fees and costs; and

VIII.     Grant such other and further relief as this Court shall find appropriate and just.

Dated:   New York, New York
         February 2, 2018

                          Respectfully submitted,

By:   _____
Gillian Cassell-Stiga
Luna Droubi
Beldock Levine & Hoffman LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
P: 212-490-0400
E: gcassell@blhny.com

Michael L. Spiegel
11 Park Place, Suite 914
New York, NY 10007
P: 212-587-8558
E: MIKESPIEG@aol.com

*Attorneys for Plaintiffs*

35