# EXHIBIT 4

# ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------

BARON WALKER, individually and
on behalf of a class of all
others similarly situated,
         -and-
MILAN HEGGS, individually and on
behalf of a class of all others Case No.:
similarly situated, 17-cv-03234
         -and- (RJD)(CLP)
DISABILITY RIGHTS NEW YORK,
     Plaintiffs,

   vs.

THE CITY OF NEW YORK; NEW YORK
CITY POLICE (NYPD) COMMISSIONER
JAMES P. O'NEILL; NYPD OFFICER
(P.O.) ROBERT BERNHARDT, P.O.
MICHAEL G. PARKS; P.O. EDWARD
NAJARRO; P.O. CARLOS COLON; P.O.
ROBERT SCHWAB; Detective
JENNYANN NELSON; Sergeant
RAYMOND GONZALEZ; P.O. JASON
WHYTE; Detective BRENDA VASQUEZ;
Sergeant DAN OSPINA; P.O. EDWARD
VAVRUICK; Sergeant JERRY
SUKHNANDAN; JOHN DOES 1-6,
     Defendants.

------------------------------

     May 22, 2019
     10:27 a.m.

  Deposition of DEPUTY INSPECTOR ROBERT M. HALEY,
taken by Plaintiff, held at the offices of Beldock,
Levine & Hoffman, LLP, 99 Park Avenue, New York, NY
10016, pursuant to order, before Elizabeth F. Tobin,
a Registered Professional Reporter and Notary Public
of the State of New York.
JOB NO. 3398550

1                         R. Haley
2       prisoner.
3           Q.    I'm sorry.  You were saying you create a
4       prisoner movement slip?
5           A.    Yes.  That tracks the prisoner from the
6       time of arrival at the court section through
7       arraignments.
8           Q.    Is there a notation made somewhere in the
9       prisoner movement slip that the individual has
10      arrived with a wheelchair?
11          A.    Yes.
12          Q.    Is that in all cases?
13                MR. LE:  Objection.
14          A.    It should be in all cases.
15          Q.    Is that by policy officers are required
16      to note in the prisoner movement slip that an
17      individual has entered custody with a wheelchair?
18          A.    Yes.
19          Q.    What policy states that?
20          A.    That is in the patrol guide.  It is in
21      208-03 arrests general processing.
22          Q.    I'm sorry, you said --
23          A.    208-03.
24          Q.    Are officers required to note only
25      wheelchairs or any assistive mobility device?

1                    R. Haley

2       A.      They should note any assistive mobility

3    device.

4       Q.      And you said that this is another point

5    at which a record is made at Central Booking that an

6    individual has entered custody with an assistive

7    mobility device; is that correct?

8              MR. LE:  Objection.

9       A.      That is correct.

10      Q.      Is a notation made concerning an

11   assistive mobility device at any time prior to

12   arrival in Central Booking in the prisoner movement

13   slip?

14      A.      There are two prisoner movement slips.

15   There's one generated at the command.  That covers

16   time of transportation from the command to the court

17   section.  And there would also be a medical

18   treatment of prisoner form that should be prepared

19   at the command also noting that.

20      Q.      You said that there are two prisoner

21   movement slips or were you referring to the prisoner

22   movement slip and the medical treatment of prisoner

23   form?

24      A.      There are two prisoner movement slips and

25   one medical treatment of prisoner form.

1                         R. Haley
2          Q.     And so the first prisoner movement slip
3     is made at the command and the second prisoner
4     movement slip is created at Central Booking?
5          A.     Correct.
6          Q.     The notation of an assistive mobility
7     device should occur in both prisoner movement slips
8     at the command and at Central Booking?
9          A.     Yes.
10         Q.     So you've identified two manners in which
11    at Central Booking the Criminal Justice Bureau has
12    identified individuals entering custody with
13    assistive mobility devices; first, by means of a
14    call from the command and, second, by means of a
15    notation in a prisoner movement slip; is that
16    accurate?
17         A.     Yes.
18         Q.     Are there any other means by which the
19    Central Booking or the Criminal Justice Bureau
20    records or assesses whether an individual has
21    entered custody with an assistive mobility device?
22         A.     They would also be accompanied with a
23    medical treatment of prisoner form and it would be
24    documented on there as well.  Those would be the
25    only two places for prisoner -- for an arrestee when

1                    R. Haley

2     record it.  That's how I have that numbered.

3              Each court section, likewise, would

4     maintain their own numbers.  For the Brooklyn

5     section they would know how many persons using

6     wheelchairs came to Brooklyn.  Bronx, would have how

7     many are in the Bronx.  But each court section

8     wouldn't ordinarily know the other court sections.

9     Does that make sense.

10         Q.    Where is that information recorded end?

11         A.    At the Criminal Justice Bureau we

12    maintain it in a spreadsheet.

13         Q.    When you say in a spreadsheet, do you

14    mean an Excel spreadsheet?

15         A.    Excel spreadsheet.

16         Q.    In each borough is it similarly

17    maintained, that list or that recording of an

18    individual entering custody with an assistive

19    mobility device in an Excel spreadsheet?

20              MR. LE:  Objection.

21         A.    I do not know 100 hundred percent.  It

22    may be one or the other.

23         Q.    So it may be an Excel spreadsheet or it

24    may be a written logbook?

25         A.    Yes.

1                        R. Haley

2      Q.     When you say logbook, could it be an

3  electronically stored log or are you referring to a

4  written paper notation?

5      A.     I'm referring to a written paper

6  notation.

7      Q.     And when you said earlier that you're

8  also tracking any assistive mobility device, is that

9  similarly recorded in either the Excel spreadsheet

10  or the written log at each of those borough court

11  sections?

12      A.     Yes.

13      Q.     When I say assistive mobility device, do

14  you understand what I am describing?

15      A.     Yes.

16      Q.     That may include items such as a walker

17  or a crutch or a scooter, for instance, but not

18  exclusively those items, inclusive to any type of

19  assistive technology that may assist a person with

20  mobility impairments in ambulating?

21           MR. LE:   Objection.

22      A.     I understand.

23      Q.     You said that you are recording,

24  individually, your borough court section records in

25  an Excel spreadsheet; is that correct?

1          R. Haley

2     A.     The borough office, the Criminal Justice

3  Bureau office records it on an Excel spreadsheet.

4     Q.     Is that the aggregated information across

5  all of the boroughs or something else?

6     A.     It's the aggregated information.

7     Q.     Across all the boroughs?

8     A.     Across all the boroughs, yes.

9     Q.     Would you be able to search that Excel

10  spreadsheet of aggregated statistics across all

11  boroughs for the number of individuals who entered

12  Central Bookings across all boroughs with

13  wheelchairs?

14     A.     Yes.

15     Q.     Would you be able to search that Excel

16  spreadsheet for the number of individuals who

17  entered Central Booking custody across all boroughs

18  with assistive mobility devices?

19          MR. LE:   Objection.

20     A.     Yes.

21     Q.     Are you familiar with the PET system?

22     A.     Yes.

23     Q.     Has the Criminal Justice Bureau at any

24  time searched the PET system for assistive mobility

25  devices?

1                          R. Haley
2    mobility device came to us without that device, I
3    would be notified of that.
4              MS. CASSELL-STIGA:  Sorry.  Maybe you
5         should read back that answer.
6         Q.    Are you saying that if they came to your
7    division with an assistive mobility device you would
8    be aware?
9         A.    Yes.  I would be aware.  But I am also
10   saying I am pretty sure that I would get a
11   notification if we had something unusual in that
12   arrest process, like a person who had an assistive
13   mobility device but needed that and then didn't have
14   that when they came down to the Criminal Justice
15   Bureau.
16        Q.    Are you saying that you believe that you
17   would be getting notifications for individuals who
18   had an assistive mobility device removed and
19   inventoried and are arriving or being transported
20   not with an assistive mobility device?
21             MR. LE:  Objection.
22        A.    I believe I would be.
23        Q.    In all cases?
24        A.    I would hope in all cases.
25        Q.    Where is the requirement for an officer

1                    R. Haley
2    to inform you of an individual that might require
3    assistive devices but does not have an assistive
4    device when entering Central Booking custody?
5              MR. LE:  Objection.
6         A.    Every 24 hours the Criminal Justice
7    Bureau is informed of unusual occurrences in the
8    court sections via an e-mail and it will list
9    various things that are going on that are of
10   interest that we should know about.  I believe that
11   if that were the type of situation or occurrence
12   where a prisoner needed an assistive mobility device
13   and didn't have it, that should be in that
14   notification system.
15        Q.    Correct me if I'm not gathering this
16   correctly, but you're saying that there is a system
17   to notify you of unusual occurrences and that you
18   believe that the category of individuals I'm
19   describing of individuals who no longer have their
20   assistive mobility device and no longer are
21   accompanied by their assistive mobility device would
22   be reported to you by means of the unusual
23   occurrence?
24             MR. LE:  Objection.
25        A.    Police department has a separate

1                          R. Haley

2    procedure called unusual occurrence.  That is not

3    the procedure you're referring to in this instance.

4    I'm talking about an internal type of system where,

5    you know, we have things that are out of the

6    ordinary every day that occur in the five court

7    sections.  The commanding officers want the borough

8    office to know about that just in case anything ever

9    happens or comes to be with that, so we should be

10   notified if something out of the ordinary were to

11   occur.

12        Q.    Is that a formal procedure that an

13   individual who is requesting or has need for an

14   assistive mobility device and does not have one in

15   their possession would be reported by means of the

16   unusual occurrence or to your office as you

17   described?

18             MR. LE:  Objection.

19        A.    It's not formal in that it's written down

20   or documented anywhere.

21        Q.    You believe there is an informal

22   understanding that officers who observe or learn of

23   an individual that requires an assistive mobility

24   device and does not have one would report that to

25   your office?

1                          R. Haley

2                 MR. LE:  Objection.

3          A.    Yes.

4          Q.    Is it possible that there are individuals

5     that are not captured in your Excel spreadsheet's

6     summary statistics concerning individuals with

7     assistive mobility devices entering custody at

8     Central Booking --

9                 MR. LE:  Objection.

10                MS. CASSELL-STIGA:  Withdrawn.

11         Q.    Is it possible that there are individuals

12    who require assistive mobility devices to ambulate

13    that enter custody at Central Booking and are not

14    recorded in your summary Excel spreadsheet that you

15    described?

16         A.    Anything is possible.

17         Q.    Are you aware of situations in which

18    individuals have entered custody at precinct and

19    have had their assistive mobility devices

20    inventoried at that time?

21                MR. LE:  Objection.

22         A.    I primarily concern myself with the

23    Criminal Justice Bureau and our court sections, so

24    I'm not a hundred percent -- I'm not aware of any

25    instances where individuals with assistive mobility

1                         R. Haley

2    devices had them removed and vouchered in the

3    precincts.

4        Q.      And you say that's because that's not

5    within your purview, the occurrences at precincts;

6    is that correct?

7        A.      Correct.

8        Q.      Earlier you described the Criminal

9    Justice Bureau as not supervising the PET system or

10   having kind of custody of that information

11   management system; is that correct?

12               MR. LE:  Objection.

13       A.      Yes.

14       Q.      What information management systems does

15   the Criminal Justice Bureau supervise or have

16   custody of?

17       A.      Criminal Justice Bureau utilizes the

18   online prisoner arraignment system.

19       Q.      You said online prisoner arraignment

20   system?

21       A.      Yes, OLPA or --

22       Q.      Any other information management systems

23   that you utilize or implement?

24               MR. LE:  Objection.

25       A.      That is the one.

1            R. Haley

2   also obtained during arrest processing; is that

3   correct?

4        A.    Correct.

5        Q.    Is that also true from the BADS system,

6   the ARC system and the other systems that we've

7   identified earlier?

8        A.    That's correct.

9        Q.    You're only prepared to give testimony

10  about that information contained in the online

11  prisoner arraignment system?

12       A.    That is correct.

13       Q.    Where in the online prisoner arraignment

14  system is an officer required to record the fact of

15  an individual having a mobility disability or

16  impairment?

17            MR. LE:  Objection.

18       A.    Until the online prisoner arraignment

19  system we would record -- the Criminal Justice

20  Bureau, the court sections, would record that fact

21  in a notes section.

22       Q.    Is that by policy?

23       A.    Yes.

24       Q.    What policy requires officers to record

25  the existence of a mobility disability or impairment

1                        R. Haley
2    of an arrestee in the notes section of OLPA or
3    online prisoner arraignment system?
4         A.    So that policy is Criminal Justice Bureau
5    policy.  It's not stated -- it's not written in the
6    patrol guide.  It's policy where if we have an
7    arrestee, a prisoner who has a warrant and we have
8    to record that information, that would go in that
9    section.  If they had an ICE detainer, that would go
10   in that section.  If an arrest was being held up
11   because of a detective investigation, that would be
12   noted in that secretaries or if there's some type of
13   hospitalization of the prisoner or medical condition
14   of the prisoner would all be noted in that notes
15   section.
16        Q.    That's not required in any written or
17   formal policy; is that correct?
18             MR. LE:  Objection.
19        A.    That is correct.
20        Q.    But it is your informal understanding of
21   the practice of the NYPD; is that correct?
22             MR. LE:  Objection.
23        A.    That is the practice of the Criminal
24   Justice Bureau when it relates to prisoners.  We
25   would need to know, want to know, like to know,

1              R. Haley

2       Q.    In all cases would a person who is an

3  arrestee with a mobility disability or impairment be

4  considered a special category prisoner?

5              MR. LE:  Objection.

6       A.    Yes.

7       Q.    You just described yourself, your office,

8  making this notation in the online prisoner

9  arraignment system.  Would such notation in the

10  notes section of OLPA, online prisoner arraignment

11  system, occur at the precinct by someone outside of

12  your office, by an officer at the precinct --

13              MR. LE:  Objection.

14       Q.    -- prior to notification to your office?

15              MR. LE:  Objection.

16       A.    Okay.  So based on my knowledge of arrest

17  processing, it would not be entered into anything

18  other than the command log that records the

19  prisoner's presence in the command which is pedigree

20  information as well as physical, mental condition of

21  the prisoner.

22       Q.    So at the precinct when an individual is

23  arrested and brought to a precinct, a mobility

24  impairment or disability would be recorded in the

25  command log but not elsewhere; is that correct?

1                     R. Haley

2       A.     I cannot recall at this time if there is.

3       Q.     If there is such a field, would an

4    officer be required to note the existence of a

5    mobility impairment or disability in a physical

6    condition field?

7              MR. LE:   Objection.

8       A.     My knowledge of the patrol guide and the

9    procedures of the arrest and arrest report

10   preparation, there's no indication anywhere for an

11   officer to do that.

12      Q.     So the patrol guide does not require

13   officers to make a notation of a -- withdrawn.

14              The patrol guide does not require

15   officers to make a notation of a mobility impairment

16   or disability in the Omniform arrest report?

17              MR. LE:   Is that a question?

18      Q.     Is that correct?

19      A.     Yeah, that's correct.

20      Q.     At what time is the prearraignment

21   screening report made?

22              MR. LE:   Objection.

23      A.     Can you clarify which prearraignment

24   screening report you're referring to and by whom?

25      Q.     Are there multiple prearraignment

1                    R. Haley

2    who appear ill, injured or emotionally disturbed

3    obtain appropriate medical psychiatric treatment.

4    And it says, CPG 210-04 prisoners requiring medical,

5    psychiatric treatment.

6              So in those cases that prisoner requiring

7    medical attention form would be prepared.

8         Q.    I understand that the command log is

9    completed by the desk officer.  Is there anything in

10   this patrol guide procedure 208-03 arrest processing

11   that requires the arresting officer to make a

12   notation of a mobility impairment or a disability in

13   the medical treatment of prisoner form or prisoner

14   movement slip?

15        A.    That is not in this section of the patrol

16   guide.

17        Q.    You said that the medical treatment of

18   prisoner form is directed to be prepared if an

19   individual requires medical or psychiatric treatment

20   or has previously -- but there's no requirement in

21   this document that the medical treatment of prisoner

22   form be prepared if an individual has a mobility

23   disability or impairment, correct?

24        A.    That appears in 210-17, special category

25   of prisoners, where it directs that it be prepared

1                    R. Haley
2    for a special category of prisoner and the mobility
3    impaired prisoner would be determined or classified
4    as a special category prisoner.
5         Q.    That section of the patrol guide requires
6    what to be prepared?
7         A.    Medical treatment of prisoner form.
8         Q.    There's no section of the patrol guide
9    that requires that a prisoner movement slip be
10   prepared or note that there is a mobility impairment
11   or disability; is that correct?
12              MR. LE:    Objection.
13        A.    I answered that earlier.  That is under
14   210 section with prisoners with the court section
15   personnel, also special category for us to enter
16   that.
17        Q.    So only at the court section.  But at the
18   precinct an officer is not required to make a
19   notation of a mobility disability or impairment in
20   the prisoner movement slip by orders of the patrol
21   guide; is that correct?
22        A.    That is correct.
23        Q.    At the bottom of the page marked 1352
24   there is a list of related procedures.  Do you see
25   the special category prisoner patrol guide section

1                          R. Haley
2        by the time court goes down, the AO's command is
3        contacted to transport the prisoner back to the
4        command until court reopens.
5            Q.    Is that procedure in place because the
6        Manhattan court section does not have accessible
7        cells to house overnight individuals with mobility
8        disabilities and impairments?
9                 MR. LE:  Objection.
10           A.    With the exception of the Brooklyn court
11       section and the Staten Island court section,
12       prisoners in these other court sections are guarded
13       by the Department of Corrections.  So to the extent
14       that we don't have cell space, the Department of
15       Corrections would have to accept that prisoner, that
16       prearraignment prisoner, and hold that prisoner for
17       arraignment.
18           Q.    I'm asking about the accessibility
19       characteristics of the holding cell.  Is this bullet
20       point applicable in Manhattan court section in
21       existence because there are no ADA accessibility
22       cells for housing or holding the prearraignment
23       arrestee who has a mobility disability or impairment
24       at Manhattan court overnight?
25           A.    So, there are -- well --

1          R. Haley

2          MR. LE: Can you read back the question,

3    please.

4          (Record read.)

5     A.    I believe the cells in the Manhattan

6    court section, the special cells, the bathrooms in

7    those cells are ADA compliant as per this document

8    and that would make the cell also ADA compliant.

9     Q.    So why is the procedure to return a

10   prearraignment prisoner with a wheelchair to the

11   precinct command if they're going to be housed

12   overnight?

13    A.    The Manhattan court section returns all

14   prisoners who are designated specials to all

15   precincts at night when court goes down.

16    Q.    Why is that?

17    A.    Just a matter of policy.

18    Q.    Is that because there is no wheelchair

19   accessible restrooms in cells for prearraignment

20   arrestees with mobility disabilities?

21    A.    There are ADA compliant cells.

22    Q.    Do those ADA compliant cells utilized for

23   prearraignment prisoners in Manhattan court section

24   have ADA compliant toilets?

25    A.    Yes.

```
1                    R. Haley
2    wheelchair accessible vehicle; is that correct?
3         A.    I'm sorry.  Could you read that question
4    back?
5              (Record read.)
6         A.    That is correct.
7         Q.    Is there anyplace with -- withdrawn.
8              Is there any written policy that states
9    that where it says if required means that only if
10   the borough court section -- withdrawn.
11             Is there any written policy that provides
12   further guidance that where here it says if required
13   it actually means in all situations special
14   transportation is required?
15             MR. LE:  Objection.
16        A.    I'm sorry.
17        Q.    Withdrawn.  Here it says special
18   transportation will be provided if required.  Is
19   there any policy, written formal policy, that states
20   that special transportation must be provided in all
21   situations for prisoners in a wheelchair?
22        A.    No.
23        Q.    Is there any policy that states special
24   transportation must be provided to all individuals
25   with mobility disabilities or impairments?
```

1               R. Haley

2          MR. FLIEDNER:  Can you mark that 24.

3          (Plaintiffs' Exhibit 24, 3/1/18

4     operations order number 12, marked for

5     identification.)

6          Q.    Sir, do you recognize this document?

7          A.    Yes.

8          Q.    Can you please describe it for the

9     record?

10          A.    This is an operations order number 12

11     dated 3/1/18.  And the subject is pilot program

12     utilization of department vehicles equipped with

13     Americans with Disabilities Act compliant list when

14     transporting arrestees with mobility disabilities

15     within patrol borough Brooklyn North and patrol

16     borough Brooklyn South.

17          Q.    So, again, to clarify, an operations

18     order goes out to who?

19          A.    This goes out to all commands.

20          Q.    To a commanding officer?  Is there a

21     standard protocol for who it goes to?

22          A.    This goes out over the intranet, the

23     department intranet.

24          Q.    Every police officer would have access to

25     it; is that correct?

1                    R. Haley

2        A.    Yes, that's correct.

3        Q.    What date was this, in fact, issued?

4        A.    3/1/18.

5        Q.    And it would then be in effect on that

6    date or was there a separate provision in this

7    matter for implementation?

8        A.    This says effective immediately, so it

9    would be that same day.

10       Q.    You said it would be available on the

11   intranet.  Was it brought to the attention of

12   members of service by any other means other than

13   their ability to access this on the intranet as of

14   that date?

15             MR. LE:  Can you read that back?

16             (Record read.)

17       A.    I don't know.

18       Q.    So it may have been or -- that may have

19   been the only means by which the information was

20   provided to them?

21       A.    The beginning of this procedure, number

22   one, the actor is the patrol borough commander.  So

23   it's directing the patrol borough commanders of

24   Brooklyn North and Brooklyn South to make sure that

25   training is provided to the training bureau.

```
 1                    R. Haley
 2      A.    I'm clear about that.  Did you ask the
 3  question already?
 4            MS. CASSELL-STIGA:  Read it back for him,
 5      would you?
 6            (Record read.)
 7      A.    That I do not know.
 8      Q.    Any guidelines provided, if you know, for
 9  how to identify somebody with a mobility disability
10  who was in need of this form of transport?
11      A.    I would think it is fairly apparent to an
12  arresting officer that their prisoner needs some
13  type of mobility assistance.
14      Q.    Well, that's not the question.  Let me
15  ask you this question again:  Do you know if there
16  were guidelines that were set forth about how to
17  best determine whether this is somebody that needs
18  this -- that requires this form of assistance?
19            MR. LE:  Of assistance?
20            MR. FLIEDNER:  Yeah.
21      A.    I do not know.
22      Q.    Then there's obviously -- there are
23  references in the operations order to -- referring
24  back to operations order 12 which has to do with the
25  complainants and victims who are people with
```

1                    R. Haley

2    disabilities, do you have any way to know was

3    guidance provided for how that -- compliance with

4    operation 12 should fit into this new operations

5    order?

6              MR. LE:  Objection.

7         A.    No, I don't.

8         Q.    Do you know who would be the person that

9    would be able to answer that question?

10             MR. LE:  Objection.

11        A.    It would be deputy commissioner of

12   support services.

13        Q.    Do you have the name of that individual

14   at this time?

15        A.    No, I do not.

16        Q.    Lastly, would you have been in a position

17   to determine and document compliance with the

18   directive since March 1st of 2018 or does it fall to

19   the Brooklyn North and Brooklyn South to do that

20   because of the designation?

21             MR. LE:  Objection.

22        A.    It falls to Brooklyn North and Brooklyn

23   South because there will be prisoners who are just

24   transported to a command and receive a desk

25   appearance ticket and never make their way to

1          R. Haley
2    Central Booking.
3          Q.    You don't have any information about
4    specific auditing compliance or anything like that
5    since it was issued back on March 1st, 2018?
6          A.    That's correct.
7                MR. LE:   Objection.
8                MR. FLIEDNER:  Mark this 25.
9                (Plaintiffs' Exhibit 25, 6/8/18
10        operations order 35, marked for
11        identification.)
12         Q.    Take a moment to look at that and tell me
13   if you recognize that document.
14         A.    I recognize this.
15         Q.    With a do you recognize this to be?
16         A.    This is operations order number 35 dated
17   6/8/18, operational guidelines for Americans with
18   Disabilities Act compliance.
19         Q.    And what is the purpose of this specific
20   operations order?
21         A.    It's to inform members of the New York
22   City Police Department how to interact with persons
23   with disabilities and -- I'm sorry.  It gives a
24   bunch of definitions here, facilitate access to
25   Department of Services' programs and activities for