**EXHIBIT 13**



# PATROL GUIDE

| Section: Arrests | Procedure No: 208-05 |
|---|---|
| **ARREST - GENERAL SEARCH GUIDELINES** ||
| DATE ISSUED: 07/01/20 | DATE EFFECTIVE: 07/01/20 | REVISION NUMBER: | PAGE: 1 of 5 |

**ARRESTING OFFICER**

1. Comply with the provisions of *P.G. 208-02, "Arrests-Removal to Department Facility for Processing," P.G. 208-03, "Arrests-General Processing," P.G. 208-15, "Arrest Report Preparation at Stationhouse"* and the following:

   **SEARCH OF ARRESTED PERSONS**
   To maximize security and minimize potential hazards to the arresting officer, the arrested person, and other Department personnel, the following guidelines are published for the information of all members of the service:

   A. **FRISK/FIELD SEARCH**
      (1) A frisk, performed primarily to ensure the personal safety of the arresting officer, is a methodical external body examination of the arrested person conducted immediately after apprehension to find weapons, evidence, or contraband. The frisk should be conducted before or immediately after the subject is rear handcuffed, depending upon particular circumstances, temperament of the subject, and escape potential. A thorough external body examination is made by sliding the hand over the subject's body, feeling for weapons or other objects, with special attention to the waistband, armpit, collar, and groin areas. If an unusual object is detected, the officer will reach into or under the clothing to remove it.

*NOTE*  *If the arrestee has a mobility disability and requires the use of a wheelchair, scooter, etc., the arrestee should be rear cuffed while remaining seated. The frisk shall be performed on the lower body by sliding hands up each leg and under the buttocks, palms facing upwards. For the device (i.e., wheelchair, scooter, etc.), the uniformed member of the service should slide hands, palms facing down, over accessible areas of the device. The seat should be checked by sliding hands under the buttocks, palms facing down, to cover the entire seat. The arrestee should then be transported to an Americans with Disabilities Act (ADA) compliant precinct.*

   B. **SEARCH AT POLICE FACILITY**
      (1) Upon arrival at precinct of arrest or other Department facility, the arresting officer (if he/she is of the same gender as prisoner) or another designated member of the same gender as the prisoner, shall conduct a thorough search of the prisoner's person and clothing to ensure the safety of all persons within the facility and to remove weapons, contraband, and evidence not discovered by the frisk. Other items lawfully carried but that are dangerous to life, may facilitate escape, or may be used to damage Department property will also be removed from the subject.
      (2) A search at a police facility, which is not the same as a "strip search," includes the removal of outer garments (e.g., overcoats, jackets, sweaters, vests, hats, wigs, ties, belts, shoelaces, drawstrings, shoes,

**ARRESTING OFFICER (continued)**

socks, handbags, wallets, etc.). All pockets are to be emptied and all clothing not removed will be examined by grabbing, crushing and squeezing the garments and by sliding the hands across the body to detect articles that may be underneath or sewn to the clothing.

(3) Inform prisoner wearing a religious head covering that it must be searched.
  a. Advise prisoner search may be conducted in private, if he/she prefers.
  b. Comply with *P.G. 221-13, "Mentally Ill or Emotionally Disturbed Persons,"* if prisoner refuses to remove religious head covering for search.
  c. Search religious head covering for weapons and contraband and return it to the prisoner.
  d. A religious head covering will *not* be routinely removed, unlike outer garments that are removed (e.g., belts, neckties, shoelaces, drawstrings, etc.), unless there is an articulable reason to believe it is likely to be dangerous to life, is likely to facilitate escape, or is likely to be used to damage Department property.
  e. If a religious head covering is removed due to safety/security concerns, the desk officer will make a Command Log entry indicating the reason.

*NOTE*  *In cases where there is a disagreement between the desk officer and an arresting officer's immediate supervisor from an outside command as to whether or not to remove a religious head covering for safety/security concerns, the desk officer will make the final determination.*

(4) If the arrestee has a mobility disability:
  a. If arrestee uses an assistive device (e.g., wheelchair, scooter, prosthetic limb, crutches, cane, etc.), ask arrestee if it is safe for them to remove, and/or be removed from, the assistive device, and for consent to do so
    (1) If consent is given, and arrestee is able to safely remove, and/or be removed from, the assistive device, the uniformed member of the service should identify an appropriate seating area to move arrestee to, and perform a thorough search
  b. A thorough search of the assistive device must be completed, ensuring all attachments and compartments are searched
    (1) Once thorough searches of the arrestee and assistive device are completed, the assistive device should be returned to the arrestee as long as it is safe to do so. A handheld metal detector can be used to assist with the search

**ARRESTING OFFICER (continued)**

      (2)    Comply with *P.G. 210-08, "Guidelines for Prisoner Holding Pens,"* if it is determined that it is not safe to return assistive device to arrestee

  c.    The arrestee should be lodged in an Americans with Disabilities Act (ADA) compliant lodging cell

      (1)    If arrestee gives consent, but is unable to lift themselves out of, or remove, an assistive device, Emergency Medical Service (EMS) should be dispatched to location to assess the situation

          (a)    EMS will assist with the search or remove the arrestee to a hospital, as necessary

  d.    Contact the Legal Bureau, if arrestee refuses to be searched in accordance with subdivisions "a" through "c" above.

(5)    In order to achieve a balance between the privacy and personal dignity concerns of arrestees, the desk officer or supervisor supervising a search at a police facility shall assign a uniformed member to conduct the search as follows:

  a.    In situations where an arrestee's gender is not immediately apparent or an arrestee objects to the gender of the member assigned to perform the search, the desk officer or supervisor supervising the search will assign a uniformed member of the gender requested by the arrestee, consistent with officer safety and resource availability. Consistent with the privacy concerns of the arrestee, only those officers reasonably necessary to conduct the search should be present for the search

  b.    Under no circumstances shall members of the service conduct searches for the purpose of determining gender. Additionally, officers shall not ask questions about an arrestee's anatomy without a reasonable basis for doing so. Refer to *P.G. 203-10, "Public Contact – Prohibited Conduct"*

*NOTE*    *In the event the gender of the officer assigned to conduct the search differs from the gender requested by the arrestee, the desk officer or supervisor supervising the search shall make a detailed entry in the Command Log regarding the factors considered in assigning member(s) to conduct the search and identities of the uniformed member(s) who actually conducts the search.*

  C.    <u>STRIP SEARCH</u>

      (1)    A strip search is any search in which an individual's undergarments (e.g., bra, underwear, etc.) and/or private areas are exposed or in which an individual's clothing is removed, lifted up, or pulled down to expose undergarments or private areas. A strip search of a prisoner may not be conducted routinely in connection with an arrest. Strip searches may only be conducted with the knowledge and

**ARRESTING OFFICER (continued)**

approval of the arresting officer's immediate supervisor or the borough Court Section supervisor. A strip search may only be conducted when the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods.

*NOTE*  *If a strip search is conducted, such information will be entered in the Command Log, arresting officer's digital **Activity Log**, and also documented on the **ON-LINE BOOKING SYSTEM ARREST WORKSHEET (PD244-159)** or the **ARREST REPORT - SUPPLEMENT (PD244-157)**. A subsequent strip search will not be conducted unless there is reasonable belief that the subject has acquired a weapon or contraband.*

(2) The arresting officer requesting authorization to conduct a strip search must describe the factual basis for the request to the officer's immediate supervisor/borough Court Section supervisor. A supervisor will authorize a strip search only when an arresting officer has articulated a reasonable suspicion that the individual is concealing evidence, contraband, or a weapon. Note, this is a different standard than the probable cause required for the arrest. The immediate supervisor of the arresting officer/borough Court Section supervisor, based on the facts presented, will determine if a strip search should be conducted. The supervisor authorizing the strip search is responsible for ensuring the search is conducted properly.

(3) Other factors that should be considered in determining whether an appropriate basis exists for a strip search include the nature of the crime (i.e., serious violent felony), arrest circumstances, subject's reputation (i.e., extremely violent person), acts of violence, unaccounted "hits" on magnetometers or walk-through metal detectors, and any discoveries or information from previous searches of the same individual or others arrested with him/her.

*NOTE*  *In cases where there is a disagreement between the desk officer and an arresting officer's immediate supervisor from an outside command as to whether or not to conduct the strip search, the desk officer will notify the precinct/police service area/transit district commanding officer or duty captain. The precinct/police service area/transit district commanding officer or duty captain will make the final decision whether or not to conduct the strip search.*

(4) A strip search shall be conducted only by a member of the same gender as the arrested person, in a secure area, in utmost privacy, and in the presence of only those members of the service reasonably necessary to conduct the search. In order to achieve a balance between the privacy and personal dignity concerns of arrestees, the desk officer or supervisor supervising a strip search shall assign a uniformed member to conduct the search as follows:
a. In situations where an arrestee's gender is not immediately

**ARRESTING OFFICER (continued)**

    apparent or an arrestee objects to the gender of the member assigned to perform the search, the desk officer or supervisor supervising the search will assign a uniformed member of the gender requested by the arrestee, consistent with officer safety and resource availability.

    b.    Under no circumstances shall members of the service conduct searches for the purpose of determining gender. Additionally, officers shall not ask questions about an arrestee's anatomy without a reasonable basis for doing so. Refer to *P.G. 203-10, "Public Contact – Prohibited Conduct."*

*NOTE*    *In the event the gender of the officer assigned to conduct the search differs from the gender requested by the arrestee, the desk officer or supervisor supervising the search shall make a detailed entry in the Command Log regarding the factors considered in assigning member(s) to conduct the search and identities of the uniformed member(s) who actually conducts the search.*

    It should not be necessary to touch the subject's body, except for the examination of the hair. UNDER NO CONDITIONS SHALL A BODY CAVITY SEARCH BE CONDUCTED BY ANY MEMBER OF THE SERVICE. If pursuant to a strip search, any object or foreign material is visually detected within any body cavity of the suspect, the desk officer will be notified immediately. The object WILL NOT be removed without first obtaining a search warrant. Once the search warrant is obtained, members of the service must seek the assistance of a medical professional in order to remove the object.

(5)    A strip search will not be conducted after a decision is made to void an arrest or to release the prisoner immediately upon issuance of a summons.

*RELATED PROCEDURE*

*Public Contact - Prohibited Conduct (P.G. 203-10)*
*Arrests - Removal to Department Facility for Processing (P.G. 208-02)*
*Arrests - General Processing (P.G. 208-03)*
*Arrests - Security Measures (P.G. 208-06)*
*Arrest Report Preparation at Stationhouse (P.G. 208-15)*
*Performing Local, State and Federal Warrant Checks (P.G. 208-22)*
*Notification to the Detective Bureau when a Specified Condition Exists/is Suspected (P.G. 208-73)*
*Guidelines for Prisoner Holding Pens (P.G. 210-08)*
*Mentally Ill or Emotionally Disturbed Persons (P.G. 221-13)*

*FORMS AND REPORTS*

***ARREST REPORT - SUPPLEMENT (PD244-157)***
***ON-LINE BOOKING SYSTEM ARREST WORKSHEET (PD244-159)***