**BELDOCK LEVINE & HOFFMAN LLP**
99 PARK AVENUE, PH/26TH FLOOR
NEW YORK, N.Y. 10016

JONATHAN MOORE
DAVID B. RANKIN
LUNA DROUBI
MARC A. CANNAN
CYNTHIA ROLLINGS
JONATHAN K. POLLACK
HENRY A. DLUGACZ
STEPHEN J. BLUMERT
MYRON BELDOCK (1929-2016)
LAWRENCE S. LEVINE (1934-2004)
ELLIOT L. HOFFMAN (1929-2016)

TEL: (212) 490-0400
FAX: (212) 277-5880
WEBSITE: blhny.com

September 22, 2024

COUNSEL
BRUCE E. TRAUNER
PETER S. MATORIN
KAREN L. DIPPOLD
MARJORY D. FIELDS
EMILY JANE GOODMAN
    (JUSTICE NYS SUPREME COURT, RET.)
FRANK HANDELMAN

REF: **8328.01**

WRITER'S DIRECT CONTACT:
212-277-5825
drankin@blhny.com

**VIA ECF**
Honorable Taryn A. Merkl
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    **Walker et al. v. The City of New York et al.,**
              **17-CV-3234 (DG)(TAM)**

Your Honor:

    I am a partner at Beldock Levine & Hoffman LLP, one of the counsels for plaintiffs in the above-referenced action. The plaintiffs come before Your Honor seeking a conference to compel discovery in accordance with Local Rule 37.3 and Your Honor's Individual Rule 3A.

    On February 29, 2024, the undersigned sent a letter to the defendants detailing what we understood to be the outstanding discovery in this matter. Exh. 1. Following this letter the parties met and conferred on March 8, 2024. At that meeting the defendants believed they had produced some of the materials and were going to get back to us on the delineated items. After the say lifted, counsel followed up with defendants *via* email on August 2, 2024, and again on August 12, 2024. To date no response from the defendants has been forthcoming. This letter was provided to defendants on September 13, 2024, with a request for a prompt statement of their position on these items. After further prompting from the undersigned at 6:27 pm on September 20, 2024, they asked we include this as their section of the letter:

> Defendants respectfully request the opportunity to submit a more detailed and exhaustive response to Plaintiffs' position above. Based upon a preliminary review, it appears that some of these requested documents and information were previously produced. Other requests will take some further time to evaluate. Today, Defendants requested a meet and confer to

BELDOCK LEVINE & HOFFMAN LLP

Hon. Taryn A. Merkl
September 22, 2024
Page 2

discuss these requests, but Plaintiffs' counsel declined. In short, Plaintiffs have failed to comply with Section 3.A. of Your Honor's Individual Practices. Defendants respectfully request that they be permitted to submit a response to Plaintiffs' position on or before September 27, 2024.

It appears defendants have the same position they had on March 8, 2024.

The items sought to be ordered produced are:

I.  The 'quick wins' spreadsheet (*see* Exh. 2, Notaro Trans. 66:17-69:12).[1]

Explanation: Joseph Notaro was deposed as a Fed. R. Civ. P. 30(b)(6) witness for the City to testify regarding the NYPD facilities and any remediation progress. In his deposition, he testified to the existence of a spreadsheet of 'quick wins' which purport to be a rapid way to identify and remediate accessibility issues in NYPD precincts. This document will go to show the accessibility barriers faced by people with mobility disabilities and the City's efforts and potentially the lack of effort in remediating the same.

II. Emails containing specific instructions related to the implementation of ACCESSIBLE NYPD (*see* Notaro Trans. 93:8-95:15);

Explanation: ACCESSIBLE NYPD is the title of the document produced by the NYPD detailing their plan to become compliant with the various disability statutes. Mr. Notaro testified that there were emails discussing the implementation of ACCESSIBLE NYPD. We understand that none, or very little, of the plan has been implemented. These emails will help show the defendants' policy of non-compliance, and support plaintiffs' *Monell* claim.

III. Documents and/or emails discussing or containing the 'secondary review' possibly conducted by LiRo Group related to the hub precincts (*see* Notaro Trans. 108:6-111:11);[2]

Explanation: According to defendants, LiRo Group, an architecture firm, did most of the design work for the proposed NYPD hub precincts and a 'secondary review' for any remediation which needed to happen before work could be done. Mr. Notaro could not testify that any second surveys had been completed as of February 9, 2023. These documents and emails will help show the defendants' policy of non-compliance.

---

[1] This deposition was designated confidential. An email from counsel to chambers and the parties containing the relevant pages will be sent shortly. The plaintiffs request these portions of the deposition be de-designated as confidential, so the undersigned can file the exhibit on the public docket.

[2] A hub precinct is supposed to be a location where an arrest will be processed in compliance with the various disability statutes.

BELDOCK LEVINE & HOFFMAN LLP

Hon. Taryn A. Merkl
September 22, 2024
Page 3

IV. The training videos on compliance with the Americans with Disabilities Act ("ADA") and the arrest and transport of individuals with mobility disabilities, as well as their written scripts (*see* Exh. 3, Melocowsky Trans. 27:25-42:24).

Explanation: Michael Melocowsky was deposed as a Fed. R. Civ. P. 30(b)(6) witness for the City to testify regarding his role as disabilities service facilitator with the NYPD. Mr. Melocowsky testified regarding various training videos he helped produce to train officers in interacting with arrestees with disabilities. This is directly relevant to our failure to train claim.

V. Documentation of the official number of accessible vehicles in the NYPD's accessible transportation program on October 20, 2022 (*see* Melocowsky Trans. 96:18-97:17).

Explanation: The number of accessible vehicles in the NYPD' fleet on October 2022 is relevant to rebut any assertion by the defendants that mobility disabled arrestees can reasonably expect to be transported in an accessible vehicle.

VI. Any patrol guides or written procedures concerning the determination of whether an officer transports an arrestee with a mobility disability to a hub site, hub light site, or elsewhere (*see* Melocowsky Trans. 141:4-144:19).

Explanation: This is a request for a basic policy document, which is relevant to the defendants' policies on transporting individuals with mobility disabilities.

VII. The training materials related to the handcuffing of individuals with disabilities (*see* Melocowsky Trans. 269:14-272:23).

Explanation: This is a request for a basic policy document, which is relevant to the defendants' policies on transporting individuals with mobility disabilities.

VIII. Operations Order 30 (2020) and Operations Order 21 (2022). These operations orders were requested on November 2, 2022, and on December 2, 2022.

Explanation: These operations orders relate to the NYPD's policy relating to transport of mobility disabled arrestees. These are direct policy documents which are relevant for our policy and practice claims.

IX. The deposition of the Sergeant in charge of the Bronx Central booking intake on August 12, 2019 (*see* Exh. 4, Fuseymore Trans. 55:20-57:25).

Explanation: P.O. Fuseymore testified to what a Sergeant at Bronx Central booking intake would do if someone called in and told them an individual with a mobility disability was headed to intake. This is the first we heard of this practice and requires a deposition of the Sergeant him or herself to obtain a first-hand account of how the practice is implemented.

BELDOCK LEVINE & HOFFMAN LLP

Hon. Taryn A. Merkl
September 22, 2024
Page 4

We thank the Court for its attention to this matter.

Respectfully submitted,

David B. Rankin